THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, v. GREGORY SMITH, Petitioner-Appellant.

First District (5th Division) No. 85—1195

Opinion filed July 17, 1987.

Steven Clark, of State Appellate Defender's Office, Alan Raphael, of Loyola University School of Law, and James P. Goodridge, law student, all of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Christopher J. Cummings, and Robert M. Podlasek, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial defendant Gregory Smith was found guilty of armed robbery, armed violence, and aggravated battery. He appeals urging the following: (1) his right to due process was violated by the prosecution's repeated references to his post-arrest silence; and (2) the cumulative impact of numerous instances of prosecutorial misconduct, including improper closing and rebuttal, denied him a fair trial.

We affirm.

The following pertinent testimony was adduced at trial. On the night of February 27, 1984, an armed robbery occurred at the Bee-Gee Tavern in Chicago. Two patrons, Officer James Ahern, an off-duty Chicago police officer, and Joseph Mahoney, were wounded. Nineteen shots were fired in the course of the robbery, which lasted approximately 30 to 60 seconds. Thirteen bullets were traced to two weapons owned by Ahern and six were traced to nonpolice weapons. Defendant, Fred Brown, and Ricky Anderson were alleged to be the perpetrators of the robbery and related crimes. Fred Brown died of gunshot wounds at the tavern. Defendant and Anderson were both wounded. Defendant was tried separately from Anderson.

At trial defendant admitted being present at the tavern at the time in question but denied that he had participated in the crime. According to defendant the events leading up to the crime began some five days earlier on February 22, 1984. In the early hours of that day Brown came to defendant's house seeking asylum from the police. Brown told defendant that he had just killed a man named Willie Stokes. Brown then slept at defendant's house and left in the morning. Three days

later Brown returned with a newspaper which contained an article mentioning a $25,000 or $20,000 reward being offered for any information leading to the prosecution of the murderer of Stokes. Two days later defendant met Brown at a bus stop at 108th and Michigan Avenues. Brown was driving a red Ford and offered defendant a ride. Defendant was carrying a .38 caliber revolver, which he placed in the glove compartment of Brown's car. The two men drove around for a while and eventually picked up Anderson, who was carrying a .25 automatic gun. A second stop was made to pick up some shells for Brown's .12 gauge sawed-off shotgun, which he had under the driver's seat.

Defendant initially thought that Brown was going to drive him home. During the course of the car ride Brown remarked that he would have to kill the people who knew of his participation in the Stokes murder. Defendant assumed that Brown was referring to him because, as far as he knew, he was the only one who knew of the murder. The three men drove west on 79th Street past defendant's apartment. Defendant feared that Brown intended to kill him. Defendant asked Brown to pull over at the Bee-Gee Restaurant so that he could use the men's room. Brown pulled up in front of the tavern and defendant entered, unarmed, and went directly to the men's room. It was about 9:30 p.m. While he was in the men's room he heard a man say: "This is a stickup." He stepped out of the men's room and was shot in the chest by Ahern. Defendant fell to the floor and was shot a second time in the leg. Defendant crawled out the back door when the shooting stopped. He was found by two police officers one-half block west of the tavern, collapsed in the snow. He was taken to Holy Cross Hospital and then transferred to Cook County Hospital. While being questioned at the hospital, defendant stated that he did not know who shot him, that he was unaware that shooting was going to take place, and that he wanted to die.

The State's version of these events was supplied by four eyewitnesses. All four testified that Brown entered the tavern alone at about 9:15 p.m. wearing a red hat. He used the washroom and then left. Two other men entered the tavern approximately 15 minutes later and walked to the rear of the bar. These men were immediately followed by Brown, who put a shotgun to the head of the man nearest the door, Thomas McGowan. Defendant announced a stickup as he stood on the step leading to the men's room. Brown then marched McGowan toward the rear of the bar where there were several other patrons. Brown pushed McGowan face down on the floor. Ahern, armed with a .38 caliber revolver, announced that he was a police officer and shot Brown, who had turned toward him with his shotgun. Next, defendant

shot Ahern in the buttocks. Ahern then shot defendant in the chest and also shot Anderson. Defendant next shot another patron, Mahoney, who was attempting to crawl away. Ahern shot defendant a second time. Ahern then retrieved his second weapon and fired seven rounds in Anderson's direction, striking no one. Defendant was arrested a few minutes after the shooting one-half block from the tavern.

OPINION

Over defense objection the prosecution introduced evidence regarding defendant's failure to relate his exculpatory story at the time of his arrest and interrogation by the Chicago police. They also cross-examined defendant concerning this failure and again referred to it in final argument. The court gave no precautionary instructions regarding the use of defendant's post-arrest silence. Defendant contends that this conduct by the State constitutes a clear violation of his due process rights in accordance with *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240.

The touchstone of any inquiry into errors concerning cross-examination of a defendant about his failure to make a post-arrest statement of innocence is *United States v. Hale* (1975), 422 U.S. 171, 45 L. Ed. 2d 99, 95 S. Ct. 2133, wherein it was held error for the State to cross-examine a defendant about his post-arrest silence, even faced with his testimony of innocence at trial. In that case the court noted that absent a "threshold inconsistency" between the post-arrest silence and the trial testimony, it was error to permit such cross-examination. (*United States v. Hale* (1975), 422 U.S. 171, 176, 45 L. Ed. 2d 99, 104-05, 95 S. Ct. 2133, 2136; see also *People v. Timms* (1983), 114 Ill. App. 3d 861, 449 N.E.2d 1366.) While *Hale* and its progeny (*Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240) involved post-arrest silence, the principles of those cases have been applied in situations where the defendant has been only partially silent after arrest. The crucial inquiry remains whether there is a threshold inconsistency between the defendant's post-arrest silence and his subsequent trial testimony. (*People v. Green* (1979), 74 Ill. 2d 444, 386 N.E.2d 272; *People v. Beller* (1979), 74 Ill. 2d 514, 386 N.E.2d 857; *People v. Rehbein* (1978), 74 Ill. 2d 435, 386 N.E.2d 39.) In *Rehbein* the defendant was charged with giving a woman a ride in his car, then driving to an isolated area and sexually assaulting her. Police traced defendant by the license number that the complainant had noted on his car. When confronted by police, defendant said that the license plate belonged to a car which had long been inoperable and that he had been at home at the time of the assault. At trial he acknowledged that he had picked up

the complainant but asserted that she had initiated the sexual contact and then asked for money. The court permitted cross-examination of the defendant concerning his failure to communicate his consent defense to police at the time of his arrest. In so doing, the court noted that the consent defense was obviously inconsistent with the statements given police after arrest. In *Green,* however, the court found error in such cross-examination where the defendant's trial testimony was not inconsistent with the statements given at the time of his arrest for burglary. At trial the defendant stated that he entered the building only to find shelter for his family. The court noted that the only deviation in defendant's testimony concerned whether defendant had driven to the scene of the occurrence. That inconsistency was collateral to the subject of improper cross-examination. In *Beller* the court found error in the prosecutor's comment about the defendant's failure to advance his claim of innocence at the time of his arrest. The court found that where the question of inconsistency is ambiguous, the requisite manifest inconsistency is not established and the prosecutor is precluded from cross-examining or commenting about a defendant's failure to advance his claim of innocence. The court in *Green* and *Beller,* while finding error, found such error to have been harmless under the circumstances of the case.

 Here, the inconsistency, if it exists, is not significant. In the State's view defendant failed to give his exculpatory statement because he was waiting to see if Brown had died. This is not the only possible reason for defendant to withhold his statement. He testified that he was struck three times by a nurse at the hospital when he refused to tell her his name. He feigned unconsciousness in the hope that the nurse would leave him alone. When the nurse left the room the police entered and began their questioning. Defendant remained silent. This silence could have been nothing more than a protest of the nurse's mistreatment. Or it could have been defendant's exercise of his *Miranda* rights. It is this ambiguity (the absence of the direct contradiction or manifest inconsistency as present in *Rehbein*) which precluded the additional comment by the prosecutor concerning defendant's failure to advise the police about his fear of being killed by Brown. We therefore conclude that the prosecutor's comments on defendant's failure to offer his exculpatory explanation at the time of his arrest were error. We also find, however, that the error was harmless beyond a reasonable doubt. (*People v. Beller* (1979), 74 Ill. 2d 514, 386 N.E.2d 857.) In this case the evidence was overwhelmingly against defendant's version. Four eyewitnesses corroborated the State's version. According to them Brown entered the tavern alone at approxi-

mately 9:15 p.m. and used the washroom, then left. About 15 minutes later, defendant and Anderson entered the tavern and walked towards the rear of the bar. Defendant, from the step leading to the washroom, announced a holdup. Immediately thereafter defendant began shooting. Considering this substantial evidence of guilt, we are satisfied beyond a reasonable doubt that the error did not contribute to defendant's conviction.

◼ Defendant next contends that the prosecution's closing argument inflamed the passions of the jury and denied him a fair trial. The prosecution began its closing argument by mentioning defendant's knowledge of the murder of Stokes:

"PROSECUTION: Counsel, Ladies and Gentlemen of the jury, Joan, this case is not about the murder of Willie Stokes, Jr., although I have no doubt that this defendant knows more about that case than any of us in this courtroom know.

MS. McINERNEY: Objection.

MS. TRAFELET: Or will ever know.

THE COURT: The objection is overruled. You may proceed."
The prosecution similarly mentioned the Stokes murder in rebuttal closing argument. We note, however, that the attitude and demeanor of counsel and the general atmosphere of the trial, observed by the trial court, cannot be reproduced in the record on appeal. Because the trial court is in a better position than a reviewing court to determine the prejudicial effect, if any, of a remark made during argument, the trial court's ruling on such argument will be upheld by this court unless there had clearly been an abuse of discretion. (*Enloe v. Kirkwood* (1970), 120 Ill. App. 2d 117, 256 N.E.2d 459.) Here, the prosecution merely highlighted the inherent inconsistency in defendant's testimony. The statement merely implies that if defendant had feared for his safety then he could have sought refuge with the police. The jury had the opportunity to find the prosecution's theory implausible. Instead, the jury found defendant not credible.

◼ Defendant next objects to the prosecution's statement that in order to believe defendant the jury would have to believe that everyone else was lying. However, this is a true statement. The prosecution's version of the robbery varied substantially with defendant's version. Attorneys are allowed broad latitude in drawing reasonable inferences and conclusions from the evidence. (*Saputo v. Fatla* (1975), 25 Ill. App. 3d 775, 324 N.E.2d 34.) The trial court was not in error in allowing the prosecution to make the statement that the jury would ultimately have to believe one side over the other.

◼ Additionally, defendant finds error in the following statement

made during closing argument:

"PROSECUTION: He wants you to believe that somehow there is this massive conspiracy [sic] a conspiracy that includes Jim Ahern, Chicago police officer, four civilians who happen to go in that tavern on that night, dozens of Chicago police officers, from the rank of commander on down and state's attorney, myself and Miss Trafelet included, we all conspired—

MS. McINERNEY: Objection. Improper rebuttal.

THE COURT: As to the last remark of the prosecutor, the objection is sustained, and the jury is instructed to disregard. There has been no accusation against the prosecution trying the case. You may proceed."

Although the prosecution's remarks were improper, the court took proper measures to guard against any prejudicial effect on the jury. Under these circumstances, we find no reversible error. *Taylor v. Carborundum* (1969), 107 Ill. App. 2d 12, 246, N.E.2d 898.

■ Finally, defendant contends that the prosecution inflamed the passions of the jury and unfairly prejudiced him in the following statement:

"PROSECUTION: When you use a gun to take something from people, and you are too lazy to get out and work for, [sic] you're a coward. And those men were cowards. Compare off. [sic] Ahern who walked in that bar a man and was carried out a hero, to Gregory Smith who walked in that bar and crawled out like a rat."

There was no objection to this statement made by defendant's counsel during closing argument. As a consequence, any error arising from the remarks was waived. (*Lindroth v. Walgreen* (1950), 407 Ill. 121, 94 N.E.2d 847.) Furthermore, under the criteria for determining whether the doctrine of plain error should be invoked, whether the evidence is closely balanced or the error is of such a magnitude that the accused is denied a fair and impartial trial (*People v. Gacy* (1984), 103 Ill. 2d 1, 468 N.E.2d 1171), the statement complained of here is not of the magnitude that would justify the implication of the plain error doctrine.

For the foregoing reasons judgment of the circuit court of Cook County is affirmed.

Affirmed.

SULLIVAN, P.J., and PINCHAM, J., concur.