THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEFFREY HALCOMB, Defendant-Appellant.

First District (3rd Division)   No. 87—1542

Opinion filed November 2, 1988.

Jenner & Block, of Chicago (Glenn K. Seidenfeld and Barry Levenstam, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Kenneth T. McCurry, Kim A. Novi, and Marilyn F. Schlesinger, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

Defendant Jeffrey Halcomb, charged by indictment with aggravated criminal sexual assault and found guilty of that offense by a jury, appeals his conviction and the 10-year prison sentence imposed thereon. We reverse.

The events at issue began in the early hours of March 1, 1986, with an incident that did not involve defendant. The complainant had attended a party with her sister and three friends. The sisters were dropped off in front of their home sometime after 1:30 a.m. and were accosted before they reached the front door of their house by the boyfriend of complainant's sister. The boyfriend screamed at complainant's sister, and complainant entered her house to call the police. She went back outside and found the two still arguing while the friends who had driven them home looked on. The sisters went into their house, and the boyfriend tried to force his way in behind them. Complainant testified that the boyfriend pulled her sister outside and that he forced her sister into the car and drove off.

Complainant and her friends made a report of the incident at a police station approximately five blocks from her home. Complainant argued with one of her friends, declined his offer of a ride back to her house, and began walking toward her home.

Complainant testified that she saw defendant approaching her, and that as they came close to each other, he blocked her path. She told defendant that she did not know him and tried to walk around him. She testified that defendant grabbed her from behind, that she struggled, but was unable to stop him from dragging her into an alley. She said that he pushed her against a wall, threatened to kill her if she made any noise, and began to unzip her jacket. Complainant then warned defendant that the police were following her, and he dragged her to his car and forced her into the passenger seat. After thwarting another escape attempt by complainant and driving a short distance, defendant stopped the car and forced her into sexual acts.

Complainant testified that defendant then ordered her to put on her clothes, pulled her from the car, dragged her through a gangway, across a lawn, and down a flight of stairs to a basement apartment. Complainant said that defendant forced her into other sexual acts, including intercourse, inside the apartment. Defendant then ordered her to dress, dragged her back outside and forced her back into his car. She testified that she was lying flat in the fully reclined passenger seat, that defendant said that the police were following him, that she turned around to look, and that she saw a light shining into their car. She said that she grabbed for the door, avoided defendant's attempts to hold her inside the car, fell out of the car, and screamed to the police that she had been raped.

A police officer testified that in the early hours of March 1, 1986, he was watching traffic from his parked squad car in the hope of seeing the car involved in the abduction of complainant's sister earlier that night. He saw a car which fit the description, followed it, and observed a male driver and female passenger sitting upright in the car. He saw the woman turn around and look in his direction. When the car stopped, the officer saw complainant jump out; she screamed that the driver had raped her. The officer testified that complainant's blouse was unbuttoned and that he saw red marks on her neck and a bruise on her hand. Defendant was arrested without struggle.

The prosecution presented a report of complainant's admission to Swedish Covenant hospital; that report indicated that complainant had suffered "small scrapes" on her right hand. The nurse who examined complainant and prepared the report testified that she had seen no other marks or signs of injury on complainant's body. The prosecu-

tion also introduced six photographs which purported to show complainant's injuries. Two of the photos were taken by a police technician; they show the aforementioned hand scrapes and neck bruise and were admitted without defense objection. The other four photos, however, were revealed to the defense for the first time only a day before trial, and the defense objected to their admission on the ground that the prosecution had not complied with their attempts to discover all photos which were to be used at trial. The photos show bruised body parts, but do not include the face of the person depicted. Complainant testified that the bruises had appeared days after the incident and that her sister had taken the pictures. The defense argued that the prosecution's failure to produce the photos during discovery prevented any investigation of their authenticity. The trial court concluded that the failure to produce the photos was inadvertent, that defendant had not been prejudiced by the delayed production, and that the photos would be admitted.

Defendant testified that while driving home on the night in question, he noticed complainant walking and that she signalled to him. He pulled over and offered complainant a ride; she accepted. Defendant said that he invited complainant to accompany him to his apartment and that he neither forced nor threatened her in any way. He testified that entry to his apartment required passage through a latched gate and a double door which requires the use of both hands to open and that complainant entered willingly.

Before trial, the court had conducted a hearing on the admissibility of a statement made by complainant while at defendant's apartment: defendant would have testified that complainant confided in him that she had recently had an abortion and was taking birth control pills. The prosecution claimed that complainant had mentioned the abortion in an attempt to dissuade defendant from assaulting her. The trial court ruled that the portion of the conversation which revealed complainant's abortion was made inadmissible by the Illinois rape shield statute (Ill. Rev. Stat. 1985, ch. 38, par. 115—7(a)) and by its unduly inflammatory nature. The court ruled that defendant could testify only to that part of the conversation in which complainant revealed her use of birth control pills, and on cross-examination, complainant denied discussing the topic with defendant.

Defendant testified that complainant consented to the sexual acts which he concedes took place. He said that complainant rushed out of his apartment in anger at his poor sexual performance and that he chased her and convinced her to accept a ride home. He said that he stopped his car when he saw the police vehicle following him and that

he was surprised by complainant's exit from his car.

On direct examination, defendant testified that he had lived in his apartment since leaving the Navy; that he had been in the Navy approximately two years; and that he had received an honorable discharge. Defendant's service in fact began in December 1980 and ended in February 1982. On cross-examination, the prosecution asked defendant if he had been "thrown out of the Navy." The court called a sidebar, after which the prosecution asked, "The discharge that you got back in 1982, in February, some thirteen months after you enlisted in the Navy, this discharge in part was for the offense of larceny, for taking billfolds, wasn't that correct?" Defense counsel objected, and the court called another sidebar. The court ruled that the prosecution could impeach defendant's testimony on the specifics of the length of his service and whether his discharge was honorable. The defense stipulated that defendant served in the Navy for 13 months and that he received a general discharge. When cross-examination resumed, the prosecution showed defendant a document and asked if he recognized it. When defendant said that he did not, the prosecutor began to read: "Poor performance and attitude and marks to—" The trial court sustained the defense objection which interrupted the prosecutor's reading.

The jury found defendant guilty of aggravated criminal sexual assault, the trial court sentenced him to a 10-year term in the Illinois Department of Corrections, and this appeal followed.

Defendant's first contention on appeal is that the aggravated criminal sexual assault provision under which he was convicted (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(2)) is unconstitutional. He argues that the statute treats him differently from similarly situated defendants and thus violates the equal protection guarantees of the Federal and State Constitutions because, unlike other offenses, which are enhanced to aggravated levels by the infliction of "great bodily harm," criminal sexual assault is aggravated by the infliction of "bodily harm."

■ We do not find the differences cited by defendant to be violative of the equal protection clause. "Only when the law lays an unequal hand on those who have committed intrinsically the same quality of offense and penalizes one and not the other does the equal protection clause come into play." (*People v. Bradley* (1980), 79 Ill. 2d 410, 416, 403 N.E.2d 1029, citing *Skinner v. Oklahoma* (1942), 316 U.S. 535, 541, 86 L. Ed. 1655, 1660, 62 S. Ct. 1110, 1113.) Kidnapping, arson, and battery, cited by defendant as examples of offenses which are aggravated by the infliction of great bodily harm, cannot, in our view,

be construed as intrinsically the same quality of offense as that committed by defendant. Criminal sexual abuse, though more similar to defendant's offense than the foregoing, is still sufficiently distinct from sexual assault to justify differing aggravation provisions, since this court has previously determined that the sexual assault statute punishes conduct distinct from and more serious than that proscribed by the sexual abuse statute. (*People v. Bartay* (1986), 150 Ill. App. 3d 130, 132, 501 N.E.2d 364.) We hold that the enhancement of criminal sexual assault because of the infliction of bodily harm did not treat defendant differently from others committing the same quality of offense and therefore did not violate his right to the equal protection of the laws.

Defendant also argues that the trial court improperly excluded evidence that complainant had revealed to him that she had recently had an abortion. He contends that his knowledge of that fact demonstrates his intimacy with complainant and would corroborate his contention that she consented to the sexual acts. The State answers that mention of the abortion would have been cumulative in light of defendant's cross-examination of complainant about her mention of birth control and that its admission would have violated the Illinois rape shield statute (Ill. Rev. Stat. 1985, ch. 38, par. 115—7), which provides that in prosecutions for sexual assault, "the prior sexual activity or the reputation of the alleged victim is inadmissible except as evidence concerning the past sexual conduct of the alleged victim with the accused." The statue is an expression of the legislature's determination that a complainant's reputation or prior sexual conduct with persons other than the accused has no probative value on the question of whether she consented to have sexual relations with the accused at the time in question. See *People v. Hughes* (1984), 121 Ill. App. 3d 992, 999, 460 N.E.2d 485.

The evidence at issue here, however, was offered not to establish prior sexual activity, but to prove that defendant and complainant engaged in intimate conversation immediately before the sexual acts in question took place. Evidence of the relations existing between the defendant and the victim prior to the crime is relevant. (S. Wharton, Criminal Evidence §137, at 581 (14th ed. 1985).) Conduct and declarations of the victim are admissible to determine the nature of the incident in which the victim was harmed. (S. Wharton, Criminal Evidence §136, at 579 (14th ed. 1985).) Other jurisdictions have recognized the distinction between evidence offered to prove sexual conduct and evidence offered to show the occurrence of an otherwise relevant conversation which revealed sexual conduct. In *Doe v. United States* (4th

Cir. 1981), 666 F.2d 43, for example, the United States Court of Appeals, interpreting the Federal rape shield provision (Fed. R. Evid. 412), held that telephone conversations that an accused sex offender had with the complainant, as well as evidence of his state of mind as a result of what she had said to him, were relevant and admissible in spite of their suggestion of sexual conduct by complainant: "Certainly, the victim's conversations with [defendant] are relevant, and they are not the type of evidence that the rule excludes. [Defendant's] knowledge, acquired before the alleged crime, of the victim's past sexual behavior is relevant on the issue of [defendant's] intent." 666 F.2d at 48.

In *State v. Gibson* (Mo. 1982), 636 S.W.2d 956, the Missouri Supreme Court, interpreting a rape shield statute which explicitly allows "evidence of immediate surrounding circumstances of the alleged crime" (Mo. Rev. Stat. §491.015 (1978)), held that a defendant could introduce evidence of a conversation in which the complainant revealed that she was having sexual problems with her boyfriend.

In *Wood v. State* (Alaska App. 1987), 736 P.2d 363, 366, the Alaska Appellate Court, though upholding the exclusion of evidence of a complainant's sexual history, conceded the possible merit of an argument not raised by the defendant in that case: "It is arguable that [complainant's] willingness to discuss her past sexual conduct with Wood—as opposed to the fact that she had actually engaged in the past conduct—might be probative of her willingness to form a sexual relationship with Wood."

Finally, the Court of Appeals of North Carolina has held that a complainant's revelation to defendant that she was taking birth control pills is not excludable as evidence of her sexual activity. *State v. Ward* (1983), 61 N.C. App. 605, 300 S.E.2d 855.

■ The evidence at issue here was a description of a conversation between defendant and complainant immediately before the allegedly criminal acts. It was offered to show interaction which would have corroborated defendant's claim that complainant consented to intercourse, and its probative value did not depend on convincing the jury that complainant acted in conformity with prior sexual acts. We therefore believe that the conversation was not rendered inadmissible by the rape shield statute.

■ The State cites *People v. Cornes* (1980), 80 Ill. App. 3d 166, 399 N.E.2d 1346, as support for the trial court's exclusion of any mention of the abortion conversation. In *Cornes*, as in the instant case, the defendant in a sexual assault trial sought to bolster his claim of consent with proof that the complainant confided in him about an abortion. The Fifth District Appellate Court upheld the trial court's

exclusion of the evidence, holding that because there was ample evidence to show that complainant and defendant were good friends, the suggestion of an abortion would have little probative value and would have served only to prejudice the jury against complainant. In the case at bar, however, complainant and defendant did not know each other prior to the incident, and the fact that they engaged in intimate conversation has great probative value in deciding whether the acts complained of were consensual or forced. We believe that in the instant case, unlike *Cornes*, the value of the evidence in question justifies its admission.

■■■ Defendant also contends that the prosecutor's accusation that he was dismissed from the Navy for committing larceny was improper and prejudicial. We agree. Proof of arrests, charges, or actual commission of crime are not admissible against a criminal defendant; prior crimes evidence may be introduced to impeach a defendant only in the form of proof of the actual conviction of a crime. (*People v. Mason* (1963), 28 Ill. 2d 396, 400, 192 N.E.2d 835.) The record before us does not reveal any military adjudication which could be considered the equivalent of a criminal conviction of larceny. We therefore believe that the prosecution's mention of the military larceny charge was improper. (See *State v. Ancar* (La. App. 1987), 508 So. 2d 943.) Furthermore, even if the military charge did result in the equivalent of a conviction, the form of the prosecution's introduction of the charge was improper and prejudicial. A defendant's prior conviction may be shown by offering the record of his conviction, or an authenticated copy thereof, and not otherwise. (*People v. Flynn* (1956), 8 Ill. 2d 116, 121, 133 N.E.2d 257.) In the instant case, however, the prosecution asked defendant on cross-examination if he had been discharged for taking billfolds. "[T]here is no question more damaging to a defendant with a jury than one which suggests or intimates that he is a criminal or has been charged with criminal offenses. Such damage is magnified twofold when it is elicited from a defendant on cross-examination and he is compelled to testify against himself." (*People v. Kosearas* (1951), 408 Ill. 179, 181, 96 N.E.2d 539.) Even where the record of a conviction is properly introduced for impeachment purposes, a defendant cannot be cross-examined about the crime. *People v. Kellas* (1979), 72 Ill. App. 3d 445, 451, 389 N.E.2d 1382.

■■ We are unpersuaded by the State's argument that the larceny comment was proper impeachment of defendant's direct testimony. That testimony was correctly impeached by the stipulation that defendant's discharge was general rather than honorable and that his term of service was 13 months rather than two years. The prosecu-

tion's right to show that defendant had not spoken the truth on those two matters did not justify the repeated mention of prior crimes. We find the error to be particularly damaging to defendant because the scarcity of evidence to corroborate either version of the events of March 1 made the credibility of the witnesses crucial to the jury's verdict. See *People v. Schuning* (1985), 106 Ill. 2d 41, 48-49, 476 N.E.2d 423.

We conclude that the aforementioned errors deprived defendant of a fair trial. Accordingly, we reverse his conviction and sentence and remand to the circuit court of Cook County for retrial.

Reversed and remanded.

McNAMARA and RIZZI, JJ., concur.