THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DONALD ALLEN, Defendant-Appellant.

Third District   No. 3—91—0213

Opinion filed August 26, 1992.

STOUDER, J., dissenting.

Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant.

William Poncin, State's Attorney, of Macomb (John X. Breslin and Robert M. Hansen, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HAASE delivered the opinion of the court:

The defendant, Donald Allen, appeals his conviction for criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—13). The issues on appeal concern the following: whether the trial court properly suppressed a remark made by the victim several months before the offense; whether the prosecutor committed error in closing argument; and whether the defendant was improperly convicted of two counts of criminal sexual assault. We find no error and affirm.

The record shows that the defendant was initially charged with two counts of criminal sexual assault. Count I alleged that the defendant had performed sexual intercourse with Linda Morris by the use of force, and count II alleged that he had performed sexual intercourse with Linda Morris by the threat of force.

Prior to trial, the defendant filed a motion seeking to admit evidence that before the offense, Morris agreed to have sex with the defendant and Todd Mathena. At the hearing on the motion, Mathena testified that in early March of 1990, he and the defendant had a conversation with Morris. Mathena asked Morris if she would have sex with him and the defendant. Morris first refused, but she later agreed to do so. They did not, however, have sex at that time.

The trial court denied the motion, finding that the evidence was too remote and immaterial to be admissible.

At trial, Morris testified that she and the defendant had been friends before the offense. On the evening of July 14, 1990, she saw the defendant walking by her parents' apartment. The two then walked back to her apartment, where they talked. She noted that he appeared to be drunk. Around 8 or 8:30 p.m., he passed out on her couch. A few hours later, Todd Mathena came over. After he and Morris talked for a while, they walked to a liquor store and bought beer. They returned around midnight and drank some of the

beer. When the defendant awoke, he talked and drank with them for about an hour.

Mathena decided to leave around 1:30 or 2 a.m. Morris kissed him and asked him to spend the night, but he refused. After he left, the defendant grabbed Morris from behind. She pulled away from him, but he grabbed her hair, picked her up, and carried her into the bedroom. He then threw her on the bed and kissed her. Morris screamed and bit him on the shoulder, but he grabbed her by the throat with one hand, made a fist with the other, and threatened to kill her if she did not shut up. After he removed her clothes and performed oral sex on her, he forced her to have intercourse.

Following intercourse, Morris told him that she had to go to the bathroom. She then grabbed her clothes and purse and ran out of the apartment. The defendant yelled at her to come back, but she ignored him and ran to the apartment of a friend, Tina Brooks. When she told Brooks what had happened, Brooks called Mathena and the police. After the police arrived, Morris was taken to the hospital.

Tina Brooks' testimony generally corroborated Morris' testimony about what had occurred at Brooks' apartment. Specifically, Brooks said that Morris was very upset when she arrived at her apartment. Morris then told her that she had been sexually assaulted.

Doctor George Roodhouse testified that he examined Morris following the attack. Morris told him that she had been sexually assaulted. The only injury he saw was a small bruise on her left shoulder.

Officer Robert McMahon testified that he spoke to Morris following the incident. Afterwards, he went to Morris' apartment, where he found the defendant sleeping on her bed. He then arrested him.

Officer John Royal testified that he and Officer Robert Canavit questioned the defendant following the incident. The defendant admitted having intercourse with Morris but denied raping her. Officer Canavit then photographed what appeared to be a bite mark on the defendant's shoulder. The trial judge allowed the photograph into evidence. The defendant explained the mark to Royal by saying that Morris had bit him during intercourse. He also said that he had performed oral sex on Morris.

After the State rested, the defendant testified that he spent most of July 14 drinking beer and playing pool with his friends.

That evening, he met Morris outside her parents' apartment. Morris had beer on her breath. At her invitation, he went over to her apartment. While there, he drank one or two beers. He and Morris then kissed on the couch until he fell asleep.

When the defendant awoke, he saw Mathena drinking beer with Morris. He joined them and drank another beer. After Mathena left, Morris sat down by the defendant and began kissing him and rubbing his genitals. The two then went into the bedroom, where Morris performed oral sex on him. Afterwards, they had intercourse. During this time, Morris sucked on his shoulder. When they finished, the defendant put his clothes on and fell asleep on the bed.

The defendant further testified that he later spoke to Officers Canavit and Royal about the incident. He told them that he did not perform oral sex on Morris. At trial, he again stated that he did not perform oral sex on her.

Timothy Widger testified that he lived in the apartment next to Morris'. That evening, he watched television from 10 p.m. until 2:30 a.m. During that time, he did not hear any unusual sounds from Morris' apartment.

Todd Mathena testified that he had known Morris for six or seven years. He also knew some of her friends, associates, and neighbors. In his opinion, she had a reputation for being untruthful.

Opal Norris also testified that Morris had a reputation for being untruthful. Norris admitted that she was a friend and former neighbor of the defendant's mother.

Officer Robert Canavit testified in rebuttal that he and Officer Royal questioned the defendant on July 15. The defendant admitted that he had had intercourse with Morris, but he denied raping her. He also said that they had performed oral sex on each other. According to Canavit, neither the defendant nor Opal Norris had good reputations for truthfulness in their neighborhoods.

During his initial closing argument, the prosecutor stated:

"Finally, I would ask you to consider the motive that the two witnesses who were in the apartment that night might have to fabricate. Does Linda Morris have any motive to not tell the truth? Do you think she would have gone through all of this, the emergency room procedures. *** The defendant, he's on trial. That's his motive."

During his rebuttal argument, the prosecutor stated:

"Now, the defendant testified in this courtroom that he never performed oral sex on Linda Morris. Detective Royal and Detective Canavit testified that when they talked to the

defendant at the county jail he told them that he performed oral sex on Linda Morris, and as I recall the defendant's testimony he denied that he ever told that to the police. Now, if you are going to accept what the defendant has to say about this case, not only are you going to have to find that Linda Morris is a liar, but you are going to have to find that Robert Canavit and John Royal are liars."

After the jury found the defendant guilty on both counts, the judge entered convictions for both offenses. At the sentencing hearing, the defendant moved to have one of his convictions vacated. He argued that since there was only one act of intercourse, he should only have one conviction. The trial judge stated that he did not want to overturn a jury verdict, but agreed that the defendant should not have two convictions. He therefore entered a conviction and sentence solely on count I.

On appeal, the defendant first argues that the trial court erred in suppressing Morris' statement that she was willing to have sex with Mathena and the defendant. The defendant contends that the comment was admissible because it was relevant to the issue of whether Morris consented to have sex with him on July 14.

The trial judge may reject evidence which has little probative value because of remoteness, uncertainty, or conjecture. (*People v. Rogers* (1985), 135 Ill. App. 3d 608, 482 N.E.2d 639.) The admission of evidence is within the trial judge's sound discretion, and his ruling will only be reversed if it was so arbitrary that no reasonable person could take his view. *People v. Illgen* (1991), 145 Ill. 2d 353, 583 N.E.2d 515.

■■ Here, Morris made her remark about four months before the offense occurred. She made it in response to a question from Mathena, whom she was apparently fond of. Additionally, she did not have sex with the men at that time. Based on the foregoing, the trial judge could have reasonably found that the comment was too remote and immaterial to be admissible. We therefore find no error.

The defendant next argues that the prosecutor committed error in his closing statement when he argued that the defendant had a motive to lie simply because he was on trial. The defendant contends that the law does not presume a defendant to have such a motive. See, *e.g.*, Illinois Pattern Jury Instructions, Criminal, No. 1.02 (2d ed. 1981) (stating that the defendant's testimony is to be judged in the same manner as that of any other witness).

■ We note that the defendant did not object to the comment at trial or in his post-trial motion, thereby waiving the error. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) Accordingly, we will only reverse if there was plain error, which is defined as error that either denies the defendant a fair trial or that occurs in a case where the evidence is closely balanced. *People v. Morgan* (1991), 142 Ill. 2d 410, 568 N.E.2d 755.

Here, the prosecutor briefly remarked on the defendant's motive. In our view, his comment was not so prejudicial as to deny the defendant a fair trial. Additionally, Morris' testimony was credible, and it was corroborated by Brooks' testimony and the photograph. We therefore find that the evidence was not closely balanced. Accordingly, there was no plain error.

The defendant next argues that the prosecutor committed error by arguing that in order to accept the defendant's version of events, the jury would have to find that Officers Canavit and Royal were liars. The defendant contends that the prosecutor misstated the law because the proper standard is not whether one side's witnesses were more believable, but whether the defendant was proved guilty beyond a reasonable doubt. (*People v. Roach* (1991), 213 Ill. App. 3d 119, 571 N.E.2d 515.) The defendant also argues that the prosecutor misstated the evidence. He contends that since the basis of the offense was penile penetration, the defendant's performance of oral sex was irrelevant.

Attorneys have broad latitude in drawing reasonable conclusions from the evidence. (*People v. Smith* (1987), 158 Ill. App. 3d 595, 511 N.E.2d 770.) Accordingly, a prosecutor may argue that a defendant was lying if it can be fairly inferred from the evidence. *People v. Rader* (1988), 178 Ill. App. 3d 453, 532 N.E.2d 1365.

■ The defendant failed to object to these comments either at trial or in his post-trial motion. Accordingly, we can only reverse if plain error occurred. Here, the officers testified that the defendant had admitted to performing oral sex on Morris. The defendant, however, testified that he did not make that statement to them. Consequently, the prosecutor properly argued that if the jury were to accept the defendant's entire story, then they would have to find that the officers lied about the defendant's statement concerning oral sex. Moreover, the prosecutor's comments were relevant because they concerned the credibility of the three witnesses. We therefore find no plain error.

The defendant lastly argues that the trial judge erred in entering two convictions for a single act of sexual intercourse. He therefore asks this court to vacate one of his two convictions.

■ At the sentencing hearing, the trial judge stated that he would only enter a conviction and sentence on count I. The amended sentencing order reflects a conviction and sentence on only one count. Since the defendant received the relief he requested, we find no error.

The judgment of the circuit court of McDonough County is affirmed.

Affirmed.

GORMAN, J., concurs.

JUSTICE STOUDER, dissenting:
I disagree with the result reached by my colleagues. I believe the defendant is entitled to a new trial. In particular, I believe the trial court committed reversible error when it granted the motion *in limine*, thereby excluding testimony regarding the conversation which took place four months before the occurrence involved in this case.

The majority of the court has properly declared the applicable rules and standard of review. My disagreement is with the application of such rules to the facts of this case.

*People v. Rogers* (1985), 135 Ill. App. 3d 608, 482 N.E.2d 639, cited by the majority, is helpful in describing the general rules, as is *People v. Illgen* (1991), 145 Ill. 2d 353, 583 N.E.2d 515, the other case cited in the opinion on this issue. However, neither case is of any special significance in support of the result reached. In *Rogers*, the court affirmed the trial court's ruling sustaining an objection to cross-examination. The line of questioning was pursued in support of the defendant's theory the female complainant was concerned with the effect a relationship with the defendant would have on her reputation. The questions were premature but involved issues affecting the complainant's credibility which might be raised on retrial. (The case was reversed and remanded for a new trial on other grounds.)

In *Illgen* (a murder case), the court approved evidence of threats and misconduct by the defendant towards his wife occurring over a period of several years. According to the court, such evidence was properly introduced to refute any claim the death was

accidental. Even though such evidence related to events occurring a long time before the shooting, such remoteness did not render the evidence inadmissible.

Admissibility of evidence depends largely on the relevancy and materiality of such evidence. (*People v. Gardner* (1977), 47 Ill. App. 3d 529, 362 N.E.2d 14.) Evidence is considered "relevant" if it has any tendency to make the existence of any fact that is of consequence to the determination of an action more or less probable than it would be without the evidence. *People v. Illgen* (1991), 145 Ill. 2d 353, 583 N.E.2d 515.

The scope of cross-examination of a witness rests largely within the sound discretion of the trial court, and its ruling will not be disturbed on review unless there has been a clear abuse of discretion. (*People v. Rogers* (1985), 135 Ill. App. 3d 608, 482 N.E.2d 639.) An abuse of discretion will be found only where the trial court's decision is arbitrary, fanciful or unreasonable or where no reasonable man would take the view adopted by the trial court. (*People v. Illgen* (1991), 145 Ill. 2d 353, 583 N.E.2d 515.) Where the standard of review in ruling on the admissibility of evidence is an abuse of discretion, such rulings should be affirmed, unless "the defendant manifestly suffered prejudice as a result of the limitation." *People v. Crosser* (1983), 117 Ill. App. 3d 24, 30, 452 N.E.2d 857, 863.

In the instant case, the trial court excluded the evidence of the victim's conversation because it was of little probative value and too remote. I do not believe the evidence should be so considered. Under a definition of relevancy, such evidence did have a tendency to show the sexual intercourse was consensual as claimed by the defendant.

In this case, sexual intercourse was admitted by the defendant at the time of his arrest and the only issue is that of consent, which was hotly disputed. Other than the victim's account of the incident, there is no objective evidence to support the claim of nonconsensual intercourse. There was no physical evidence of force or violence. Where consent is the only issue in a case, evidence bearing on the issue ought not to be excluded unless it has no probative value. The degree of probative value should be left to the jury. A defendant ought not be deprived of an opportunity to present any evidence affecting his defense. If a defendant had "boasted" some four months before a sexual assault that he intended to rape a particular woman and thereafter did so, evidence of such boast would be relevant. It would tend to show the subsequent sexual incident was nonconsensual.

Evidence of the relations existing between the defendant and the victim prior to the crime is relevant. (*People v. Halcomb* (1988), 176 Ill. App. 3d 100, 530 N.E.2d 1074.) Conduct and declarations of the victim are admissible to determine the nature of the incident in which the victim was harmed. (*People v. Halcomb* (1988), 176 Ill. App. 3d 100, 530 N.E.2d 1074.) Other jurisdictions have recognized the distinction between evidence offered to prove sexual conduct and evidence offered to show the occurrence of an otherwise relevant conversation which revealed sexual conduct. See *Doe v. United States* (4th Cir. 1981), 666 F.2d 43; *State v. Gibson* (Mo. 1982), 636 S.W.2d 956; *Wood v. State* (Alaska Ct. App. 1987), 736 P.2d 363; *State v. Ward* (1983), 61 N.C. App. 605, 300 S.E.2d 855.

I believe the exclusion of the statements of the claimant was error. The evidence of guilt was not overwhelming and hence such error was reversible error requiring the defendant be granted a new trial.