(No. 41612.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* WILLIAM CANNON, JR., *et al.,* Appellants.

*Opinion filed September 30, 1971.*

WARD, J., took no part.

HOWARD O. EDMUND, CHARLES V. HOGREN, HOWARD T. SAVAGE, and IRWIN L. FRAZIN, all of Chicago, appointed by the court, for appellants.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAME. B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE and MICHAEL J. GOLDSTEIN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendants, William Cannon, Jr. and Lawrence Cochran, were convicted by a jury in the circuit court of Cook County for the murders of two persons. The jury found that the death penalty should be imposed, the court entered judgment on the verdicts, and sentenced defendants to death. Pursuant to our Rule 603 (Ill. Rev. Stat., ch. 110A, par. 603), defendants have appealed directly to this court.

Defendant, along with Arthur Johnson, were indicted for the murders of Donald Hopkins, Jr. and Anthony Smith. The People's evidence at trial shows that on July 25, 1966, a group of teenage boys was playing basketball on the Henry Horner School playground in Chicago. Another group of boys were hitting a softball on the opposite end of the playground. The playground was enclosed by a wire fence on three sides, and by the school building on the fourth. There were two open entrance ways in the fence. Defendants and Johnson entered the playground and ap-

proached the boys playing basketball. Defendant Cochran asked if they would join a gang called the Dell Vikings and requested that whoever would join step out way from the rest of the group. Two boys stepped out. Donald Hopkins, one of the decedents, then told defendants the rest of the group wanted no part of this. Meanwhile, Johnson had walked away from defendants, a distance of approximately 30 yards, and was standing near one of the open entrances in the fence, Cochran then started to walk away and, as he passed Cannon, said something to Cannon about "burn." It was testified that "burn" means "shoot." Cannon drew a revolver from his belt, under his shirt, and fired three or four times. The two victims were killed by these shots.

The occurrence evidence for the People consisted of the testimony of six boys present at the playground and testimony of a passing motorist who, after he had heard some shots, saw defendants and Johnson running from the school yard. At the close of all the evidence the court directed a verdict of not guilty as to the defendant, Arthur Johnson. Defendant Cochran did not testify.

Cannon testified he had been given the gun for safe-keeping by an acquaintance, whom he was seeking when he entered the playground with Johnson and Cochran. He and Cochran approached the boys playing basketball. He recognized these boys as members of a rival gang known as the Imperial Rangers. Cochran asked the boys if they wished to make peace with the Dell Vikings and said, "We want to stop all this fighting so we can be able to come to each other's parties and walk down the street in peace." When the boys told Cochran they did not wish to make peace, Cochran turned and indicated to Cannon that they should leave. Cannon then saw that one of the boys in the group, Leotis Clark, a witness for the State, had picked up a baseball bat, and along with the rest of the group, started after defendants. Someone in the group shouted, "There ain't

nothing but two of them. Let's 'f' them up." Defendants started to run, and Cannon, at a distance of approximately 25 or 30 feet from the boys, pulled the gun and shot three or four times in their general direction. In response to questions of defense counsel he denied that he shot and killed the two victims intentionally or that he knew such conduct created a strong probability of death without lawful justification.

As ground for reversal defendants contend that the court erred in refusing to give their tendered instructions on both voluntary and involuntary manslaughter. Defendants argue that the trial court erred in refusing their instructions on voluntary manslaughter for the reason that Cannon's testimony shows that the homicides were not committed with malice afterthought, that there is evidence of serious provocation by the group of boys of which decedents were members sufficient to excite an intense passion on the part of the defendants, and sufficient evidence to justify defendants' belief that they were in imminent danger of being assaulted and beaten by the group by whom they were greatly outnumbered.

In support of their contention that the trial court erred in refusing their tendered instructions on involuntary manslaughter they argue that Cannon's testimony shows he did not intend to harm anyone, his actions were at most, reckless, and the offense committed is therefore, not murder, but manslaughter.

*People* v. *Latimer,* 35 Ill.2d 178, this court, at page 182, said: "It is an established rule that if there is evidence in the record which, if believed by a jury, would reduce the crime to manslaughter, an instruction defining that crime should be given. [Citations.] It is equally well established that where the evidence clearly demonstrates the killing was murder, a manslaughter instruction is erroneous."

The record shows that the defendants, not the group of

boys, instituted the initial provocative acts. There is no evidence of sufficient provocation by the decedents or their group to excite an intense passion in a reasonable person nor does the evidence show circumstances which would create the belief, albeit unreasonable, that shooting at the group of boys was necessary to prevent defendants' suffering imminent death or great bodily harm. *People* v. *Washington,* 27 Ill.2d 104.

Cannon's testimony that he did not intend to kill anyone does not provide a sufficient basis for instructing on involuntary manslaughter. He intended to fire the gun and did in fact point it and shoot in the decedents' general direction. This act, done voluntarily and wilfully, is sufficient evidence of the intent requsite to constitute the offense of murder. *People v. Latimer,* 35 Ill.2d 178.

Defendants contend next that the trial court committed reversible error by inadvertently making a statement that could be interpreted by the jury as meaning that the People had made a *prima facie* case, that defendants must therefore present evidence, and that the defendants were proved to be guilty. The transcript shows that the remark complained of was made on a Friday afternoon, shortly after the People rested their case. During the court's explanation to the jury that the taking of evidence would be resumed on Monday he asked the attorney for the defendant Arthur Johnson if on Monday he would "be able to start some part of his case." We fail to see how the jury could construe the inquiry to mean that the court was of the opinion that the People had proved their case. We note further that the jury was instructed substantially in the language of I.P.I. Criminal 1.01 and that a verdict of acquittal was directed in favor of the defendant to whose counsel the inquiry was addressed. We do not discuss the authorities cited by defendants for the reason that there is no similarity between what occurred in those cases and here.

Defendants contend next that they were unduly prejudiced by the "life and death" witnesses called by the prosecution. The record shows that the testimony of these witnesses dealt only with the identity of the victims and the fact that they were deceased, and there was no evidence of the type which this court held required reversal in *People* v. *Dukes,* 12 Ill.2d 334, and *People v. Bernette,* 30 Ill.2d 359, cited by defendants.

Defendants contend further that the court erred in refusing to declare a mistrial when one of the jurors, who had been sequestered, reported that his razor blades had been stolen. The record shows the court interrogated the juror who stated the incident would have no effect upon his ability to fairly decide the case and that defendants' counsel then waived interrogation of this juror and the remaining jurors. In our opinion defendants were not prejudiced and the trial judge correctly denied the motion for a mistrial.

Defendants have briefed and argued a number of points which we do not discuss for the reason that the issues raised are settled by the opinion n *McGautha* v. *California,* 402 U.S. 183, 28 L. Ed. 2d 711, 91 S. Ct. 1454, decided subsequent to the argument of this case. Also briefed and argued are alleged errors in the method of selecting the jury (see *Witherspoon* v. *Illinois,* 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770) which in view of our decision with respect to the sentence need not be further discussed.

In our opinion death is not an appropriate sentence in this case. Defendants were 16 and 17 years of age at the time of the occurrence and neither had a prior criminal record. The age of the defendant (*People* v. *McWilliams,* 348 Ill. 333) and his background and circumstances are proper considerations in the assessment of the penalty to be imposed in a criminal case. *People* v. *Crews,* 42 Ill.2d 60.

After careful review of the record we conclude that the defendants should be sentenced to terms of not less than 40 nor more than 60 years in the penitentiary. The clerk

of this court is directed to enter an order in acordance herewith.

*Judgments affirmed, sentences reduced.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.