JUSTICE JOHNSON
 

 delivered the opinion of the court:
 

 Defendant, Richard Jackson, appeals his convictions for murder, attempted murder and armed robbery (Ill. Rev. Stat. 1977, ch. 38, pars. 9 — 1(a), 8 — 4(a), 18 — 2(a)). After a jury trial, defendant was sentenced to concurrent terms of 60 years for murder, 60 years for armed robbery and 30 years for attempted murder. He raises the following issues for review: (1) whether the trial court committed reversible error when it denied his motion for severance; (2) whether the trial court’s exclusion of jurors resulted in a jury which did not represent a fair cross section of the community and violated his sixth amendment right to a jury trial; (3) whether the State’s closing argument deprived him of a fair trial; (4) whether the trial court erroneously permitted the State to introduce evidence of Robert Ray’s prior out-of-court statements to enhance his credibility; (5) whether he was denied his sixth amendment right to call witnesses and due process of law when the trial judge prevented him from calling Officers Bartkiewicz and Ridges, and Dr. Schlenker; (6) whether the attempted murder conviction should be reversed because the jury was improperly instructed on the elements of murder; and (7) whether the trial court erred in imposing extended-term sentences for the offenses of murder, armed robbery and attempted murder.
 

 We reverse and remand for a new trial.
 

 Defendant Jackson and Dennis Emerson were jointly indicted and tried for the murder of Delinda Byrd and the attempted murder of Robert Ray. Before trial, defendant made a motion for severance. He argued that his defense was antagonistic to that of Emerson because the latter intended to present evidence that they were both at Ray’s place of business shortly before the incident. The trial court denied the severance motion.
 

 Edward Barry, a Chicago firefighter, testified that he received a call about a fire at 69th and Racine Avenue in Chicago, Illinois, around 4 a.m. on August 13, 1979. When he arrived at the scene, a man who was covered with blood told him that a woman was trapped in the rear of the building. She died in an air shaft before firemen could rescue her. The fire started in a rear apartment and traveled toward the front where a cocktail lounge was located.
 

 Robert Ray testified that in August 1979 he operated a lounge, the Centaur, at 1154 West 69th Street, in Chicago, and lived in an apartment directly behind the lounge. Ray first became acquainted with Dennis Emerson, also known as Dennis Jackson, in 1975. He also knew Emerson’s brothers, Richard Jackson and Ricky Jackson, who helped Ray at the lounge. Delinda Byrd was Ray’s girlfriend.
 

 The lounge was open on Sunday, August 12, 1979. Around noon, Emerson telephoned to say that he would come by. He called three or four times that day to say he would stop by but he did not arrive until after the lounge closed at 2 a.m. When Emerson arrived with Richard Jackson, they walked through the lounge to the kitchen of the apartment. While they were conversing, Byrd arrived. Emerson drew a gun and told Byrd and Ray to lie on the floor. They obeyed, lying face down. Emerson tied their hands with electrical cord while Jackson aimed a gun at them. Emerson asked Ray how to get in to the cash register and where he kept his guns. Ray heard Emerson open the cash register and saw him with the guns. Emerson searched Ray and Byrd and took money from her. Emerson hit Ray in his back. Jackson gave Emerson “a shears” and the latter stabbed Ray and Byrd with it. Emerson went into Ray’s bedroom. After he came out, Ray smelled smoke and saw his bed on fire. Emerson and Jackson threw Ray and Byrd into the bedroom and closed the door.
 

 Ray loosened his hands, opened the window, and fell into the air shaft; Byrd followed. Ray broke through a window into the lounge and ran out the front door. He asked someone to call the fire department. He was hospitalized for nine days with a collapsed and punctured lung and he suffered from smoke inhalation. In a photographic lineup, Ray identified Emerson and Jackson.
 

 On cross-examination, Ray stated that he never borrowed money from Emerson. He admitted that Emerson’s sister once asked him for money but he did not give her any.
 

 Robert Stein, chief medical examiner of Cook County, performed an autopsy on Delinda Byrd. Her death had been caused by stab wounds and by burns over 90% of her body.
 

 John Ridges, a Chicago police sergeant, investigated the Byrd homicide. On August 13, 1979, Ridges showed a photographic lineup to Ray who identified Jackson and Emerson. On August 18, 1979, he arrested Jackson at his mother’s residence.
 

 James Griffin, a Chicago policeman, was on duty on August 13, 1979, and arrived at the lounge at about 4:16 a.m. He talked with Robert Ray and then went to an address on South Sangamon Avenue, where Jackson’s mother lived, and searched the premises. The suspects were not there. Griffin returned to the lounge and recovered pieces of electrical cord.
 

 The prosecution rested and defendant called Daniel McWeeny, a Chicago policeman, as his only witness. McWeeny investigated the Byrd homicide. He spoke to Ray at the hospital on August 13, 1979. He testified that no money and no weapons were recovered in the case. The medical examiner told McWeeny that the cause of Byrd’s death was a knife wound that penetrated the lungs.
 

 Defendant rested and Emerson called Ricky Jackson as a witness. Ricky testified that Emerson had loaned $5,000 to Ray in 1975 so that the latter could furnish a lounge. Ricky assisted Ray at the lounge and worked for him until April or June of 1979. Ricky claimed that he bought marijuana from Ray and also sold it for him. Before Emerson was released from jail, Ricky asked Ray about the $5,000. On August 12-13, 1979, Emerson and Richard Jackson lived with their mother in a house on Sangamon Avenue.
 

 Dennis Emerson testified in his own defense and admitted to prior convictions. He originally met Ray because he wanted to purchase marijuana from him. He loaned $5,000 to Ray and asked his sister and Ricky, his brother, to get the money. A week after his release from prison on July 24, 1979, Emerson visited Ray at the lounge to ask about the money. He denied committing any of the crimes with which he was charged. On August 12, 1979, his brother Richard had a cast on his arm. He, Richard and Ricky spent the day at their mother’s house.
 

 At the close of the trial, the jury found Emerson guilty of murder, attempted murder, armed robbery and aggravated arson, and Jackson guilty of murder, attempted murder and armed robbery and not guilty of aggravated arson.
 

 At the close of the death penalty hearing, the jury recommended a death penalty for Emerson but not for Jackson. Jackson was sentenced to 60 years for murder, 60 years for armed robbery and 30 years for attempted murder, the sentences to run concurrently. Defendant Jackson appeals.
 

 The first issue raised by defendant is whether the trial court erred in denying his motion for a severance. In his brief, defendant merely states that his defense was antagonistic to that of his codefendant Emerson.
 

 Defendant’s argument has no merit. Defendants jointly indicted are to be jointly tried and separate trials are required only when the defenses are so antagonistic that a fair trial can be achieved only through severance. (People v. Dorsey (1980), 88 Ill. App. 3d 712, 717, 410 N.E.2d 1132, 1135.) In the instant case, there was no showing before trial that Jackson’s defense would be antagonistic to that of Emerson, and at trial Emerson testified that he and Jackson were at their mother’s house when the crime was committed. We conclude that the trial court did not err in denying defendant’s motion for a severance.
 

 Next, defendant argues that the trial court’s exclusion of jurors resulted in a jury which did not represent a fair cross section of the community and violated his sixth amendment right to a fair trial. The jury did not represent a fair cross section because persons who felt they could not impose the death penalty were excluded. Defendant contends that such persons are an identifiable and a sizeable portion of the community and their exclusion denied his right to a fair, representative jury. During voir dire, the trial court asked jurors whether “under no circumstances for religious or personal feelings *** would they possibly vote for *** the death penalty.”
 

 The precise issue raised by defendant was addressed by our supreme court in People v. Free (1983), 94 Ill. 2d 378, 447 N.E.2d 218. In that case, the court stated that the right to trial by jury or the right to a representative jury does not include the right to be tried by jurors who have stated that they will refuse to follow the death penalty law. (94 Ill. 2d 378, 402.) Accordingly, we hold that the trial court did not err in excluding from the jury those persons who stated they would not follow the death penalty law.
 

 The next two issues raised by defendant were raised by his codefendant, Dennis Emerson, in the latter’s appeal of his death penalty and resolved in Emerson’s favor by our supreme court.
 

 Defendant contends that the prosecution’s closing argument deprived him of a fair trial. Defendant states that the whole tone of the prosecutor’s rebuttal argument was calculated to make the jury believe that the defense lawyers were deliberately presenting false evidence in an attempt to free two guilty murderers. For example, the prosecutor said of defendants, “their lawyers have come into Court and laid down a nice smoke screen, a smoke screen composed of lies and misrepresentations and innuendo”; that defense lawyers Fisher and Morrissey were “just like all the defense lawyers, ladies and gentlemen, they are all the same *** what they do is this, if there is a victim, what they are going to do is dirty up the victim.” The defense lawyers “want to walk Richard Jackson out of the courtroom, they want to walk his brother out of the courtroom, they want to put them back on the street.”
 

 Our supreme court has found these statements improper. It stated:
 

 “Unless based on some evidence, statements made in closing arguments by the prosecution which suggest that defense counsel fabricated a defense theory, attempted to free his client through trickery or deception, or suborned perjury are improper. [Citations.] It is not clear whether the assistant State’s Attorney was suggesting that the defense attorneys were guilty of lying or misrepresenting facts or whether he was suggesting that the defense presented consisted of testimony which was composed of lies and misrepresentations. It is clear, however, that statements to the effect that all defense attorneys try to ‘dirty up the victim’ and that the defense attorneys want to walk the defendants out of court and put them back on the street improperly shift the focus of attention from the evidence in the case to the objectives of trial counsel. Furthermore, a comment concerning the trial tactics of ‘all’ defense attorneys cannot be said to be based on the evidence and does little to help the jury resolve the issues in the case.” (People v. Emerson (1983), 97 Ill. 2d 487, 497-98.)
 

 The court also found that the prosecution’s argument purported to charge counsel with fabrication of a defense bordering on subornation of perjury. (97 Ill. 2d 487, 499.) Accordingly, we hold that the prosecution’s closing argument deprived defendant of a fair trial.
 

 Defendant argues that the trial court erroneously permitted the prosecution to introduce evidence of Robert Ray’s prior out-of-court statements to enhance his credibility. On redirect, the trial court permitted the prosecution to ask Ray the following:
 

 “[MR. TRAINOR]: And Mr. Frazin also asked you if you told the uniformed police officers that talked to you on the street that night if the Jackson brothers had come to your tavern, do you remember him asking you that?
 

 [THE WITNESS]: Yes.
 

 [MR. TRAINOR]: And you told that uniformed police officer that the Jackson brothers had come to your tavern and had stabbed you and Delinda, isn’t that right?
 

 MR. MORRISSEY [defense attorney for Jackson]: Objection.
 

 MR. FRAZIN [defense attorney for Emerson]: Objection.
 

 THE COURT: Overruled. Both of you opened that up.
 

 [MR. TRAINOR]: Did you not?
 

 [THE WITNESS]: Yes.
 

 [MR. TRAINOR]: And what two Jackson brothers did you tell the police stabbed you and Delinda?
 

 [THE WITNESS]: Dennis and Richard.
 

 MR. MORRISSEY: Objection, a continuing objection. I never mentioned the beat officers at all.
 

 THE COURT: You mentioned several officers, overruled. You opened it up.
 

 MR. TRAINOR: And this was moments after the crime occurred, is that right?
 

 [THE WITNESS]: Right.
 

 [MR. TRAINOR]: And this was moments after you got out of the burning building, isn’t that right?
 

 [THE WITNESS]: Yes.
 

 [MR. TRAINOR]: So the first police officers you saw, you told who stabbed you and Delinda, isn’t that right?
 

 [THE WITNESS]: Yes.”
 

 The trial court also permitted the prosecution to ask James Griffin, a Chicago policeman, the following questions on redirect examination:
 

 “MR. QUINLI'VAN: Did Mr. Ray tell you who had committed those acts?
 

 [THE WITNESS]: Yes, he did.
 

 [MR. QUINLIVAN]: Would you tell the jury who Mr. Ray said committed the acts minutes after you arrived?
 

 MR. MORRISSEY [defense attorney]: Same objection. Continuing objection for the same reasons as raised yesterday at sidebar.
 

 THE COURT: Same ruling as yesterday. Proceed.
 

 THE WITNESS: He related to me at that time that a Dennis Jackson and a Richard Jackson were the offenders in this incident.”
 

 During closing argument, the prosecutor repeatedly emphasized Ray’s prior consistent statements which corroborated his testimony at trial.
 

 A witness may not testify as to statements he made out of court for the purpose of corroborating his testimony given at the trial relative to the same subject. However, to rebut a charge or an inference that the witness is motivated to testify falsely or that his testimony is of recent fabrication, evidence is admissible that he told the same story before the existence or before the time of the alleged fabrication. (People v. Clark (1972), 52 Ill. 2d 374, 389, 288 N.E.2d 363, 371.) In People v. Emerson (1983), 97 Ill. 2d 487, our supreme court rejected the prosecution’s argument that the prior out-of-court statements of Ray were properly admitted, stating that the “only prior consistent statement relevant under the circumstances would be one concerning the actions of the two perpetrators, and it did not open the door to a gratuitous corroboration of Ray’s testimony concerning the identity of his attackers.” (97 Ill. 2d 487, 500.) The supreme court found that the motive for testifying falsely existed prior to the time when the statements attributed to Ray were made and the statements should not have been admitted. (97 Ill. 2d 487, 501.) The court made the following conclusion:
 

 “The evidence of guilt consists solely of Ray’s testimony. Defendant made no inculpatory statements, as previously noted, no fingerprints were found, and there was no evidence that any of the proceeds of the robbery were in defendant’s possession. Defendant denied any participation in the offense, and his testimony, if believed, would supply the motive for Ray’s having charged him with the offense.
 

 Where guilt or innocence depends entirely on the credibility of an accuser and the defendant, no error should be permitted to intervene. ‘Where error is shown to exist, it will compel reversal, unless the record affirmatively shows that the error was not prejudicial.’ (Duffy v. Cortesi (1954), 2 Ill. 2d 511, 517.) Here, the record fails to show affirmatively that the improperly admitted testimony and the improper oral argument were not prejudicial.” (97 Ill. 2d 487, 501-02.)
 

 Accordingly, we hold that the trial court erroneously permitted the prosecution to introduce evidence of Robert Ray’s prior out-of-court statements.
 

 Defendant contends that he was denied his sixth amendment right to call witnesses and due process of law when the trial judge prevented him from calling Officers Bartkiewicz and Ridges and Dr. Schlenker.
 

 Defendant wanted to call Officer Bartkiewicz to impeach the credibility of Officer Daniel McWeeny. During cross-examination, defense counsel for codefendant Emerson asked Robert Ray whether he told McWeeny or any other policeman that when he answered the doorbell he was met by two men who pulled guns. Ray said no. During cross-examination, Emerson’s defense counsel asked McWeeny whether Ray told him that when he answered the bell he was met by the two offenders who pulled weapons. McWeeny denied saying that to Bartkiewicz. The latter would have testified that in his police report McWeeny informed him that Ray said he was met at the door by the two armed offenders.
 

 In our opinion, the testimony of Officer Bartkiewicz was irrelevant and collateral to the issues of the instant case. (People v. Schott (1976), 39 Ill. App. 3d 266, 273, 350 N.E.2d 49, 55.) McWeeny’s credibility was a collateral issue since he did not observe the crime. Therefore, we hold that the trial court did not err in refusing to allow defendant to call Officer Bartkiewicz.
 

 Defendant wanted to call Chicago police officer John Ridges and Dr. Schlenker of Billings Hospital to establish that three weeks prior to the crime he was treated at a hospital where a cast was placed on his right hand and arm. Dr. Schlenker was his treating physician and Officer Ridges arrested him. Defendant requested a continuance after Officer McWeeny testified in his case-in-chief. The trial court denied the motion because the testimony of Ridges and Schlenker would have been irrelevant.
 

 Testimony is relevant when it tends to prove a disputed fact or render a matter in issue more or less probable. (People v. Stokes (1979), 75 Ill. App. 3d 813, 819, 394 N.E.2d 681, 686.) The testimony of Ridges and Schlenker would not have been relevant because the issue at trial was the identities of the offenders, and the fact that defendant may have had a cast on his arm would not tend to prove or disprove identity. Furthermore, codefendant Emerson testified that defendant had a cast on his right arm on the night of August 12-13, 1979. Rejection of evidence is not prejudicial where substantially the same evidence is admitted at some subsequent stage of the trial. (People v. Limas (1977), 45 Ill. App. 3d 643, 648, 359 N.E.2d 1194, 1198.) Therefore, we hold that the trial court did not err in denying defendant’s motion for a continuance thereby excluding the testimony of Officer Ridges and Dr. Schlenker.
 

 Defendant argues that his attempted murder conviction should be reversed because the jury was improperly instructed on the elements of murder and the jury could have concluded that he could be found guilty even if he only intended to do great bodily harm. Attempted murder requires a specific intent to kill, whereas murder may be committed where the offender inflicts great bodily harm or knows that his acts are likely to cause death or great bodily harm. Defendant contends that the jury was confused about the elements of attempted murder by the instructions defining murder.
 

 Defendant’s argument is without merit. Defendant was charged with the attempted murder of Robert Ray and the murder of Delinda Byrd. It was proper for the trial court to instruct the jury as to the elements of both crimes. We have examined those instructions and find that they correctly stated the law. Therefore, we hold that the jury was properly instructed on the elements of murder.
 

 Since we have decided above that the prosecution’s improper arguments and the admission of Robert Ray’s prior out-of-court statements constituted reversible error, we need not address defendant’s final argument that the trial court erred in imposing extended-term sentences.
 

 For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.
 

 Reversed and remanded.
 

 JIGANTI and LINN, JJ., concur.