UNITED STATES of America ex rel.,
Maurice HUNLEY, Petitioner,

v.

Salvadore GODINEZ, Warden, Stateville
Correctional Center, Illinois Depart-
ment of Corrections, and Roland W.
Burris, Attorney General of Illinois,
Respondents.

No. 91 C 6195.

United States District Court,
N.D. Illinois, E.D.

Jan. 27, 1992.

Robert L. Graham, Bonnie B. Koch, Jen-
ner & Block, Robert D. Nachman,
Schwartz, Cooper, Kolb & Gaynor, Chica-
go, Ill., for petitioner.

Maurice Hunley, pro se.

Steven J. Zick, Asst. Atty. Gen., Chicago,
Ill., for respondents.

CONLON, District Judge.

### MEMORANDUM OPINION
### AND ORDER

Petitioner Maurice Hunley ("Hunley")
brings this habeas corpus petition against
respondents Salvadore Godinez and Roland
W. Burris ("respondents") pursuant to 28

U.S.C. § 2254 ("§ 2254"). Respondents are currently imprisoning Hunley as a result of his convictions for residential burglary and murder by the Circuit Court of Cook County. Hunley challenges the constitutionality of his conviction on two grounds: (1) the prosecutor's improper rebuttal closing argument allegedly deprived him of his constitutional right to due process and a fair trial; and (2) the burglary of four sequestered jurors allegedly violated his right to due process and a trial by an impartial jury.

## BACKGROUND

The procedural background is as follows. In his second trial by jury, Hunley was convicted of residential burglary and murder by the Circuit Court of Cook County, Illinois. Hunley was sentenced to 40 years in the Illinois Department of Corrections, where he is currently imprisoned. Hunley subsequently appealed his conviction to the Illinois Appellate Court. Hunley's conviction was affirmed. *People v. Hunley*, 189 Ill.App.3d 24, 136 Ill.Dec. 664, 545 N.E.2d 188 (1989). In January 1990, the Illinois Supreme Court denied Hunley's petition for leave to appeal. *See People v. Hunley*, 129 Ill.2d 568, 140 Ill.Dec. 677, 550 N.E.2d 562 (1990). The United States Supreme Court denied Hunley's petition for writ of certiorari. *Hunley v. Illinois*, —— U.S. ——, 111 S.Ct. 86, 112 L.Ed.2d 58 (1990). Hunley now seeks habeas relief from this court pursuant to § 2254.

The state appellate court's summary of the facts serves as the basis for review of this habeas corpus petition. This summary of relevant facts is entitled to a presumption of correctness under § 2254(d).[1] *See also Sumner v. Mata*, 449 U.S. 539, 545–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981); *Balfour v. Haws*, 892 F.2d 556, 559 (7th Cir.1989). On November 18, 1983, Lisa Tyson was fatally stabbed in her northside Chicago apartment. The Chicago Police Department's subsequent investigation revealed that there were no signs of forced entry into Tyson's apartment. A key was required to gain entry into the building and into Tyson's apartment. There was no other possible means of entry into the apartment. The investigation eventually centered on Hunley because he was employed at a nearby hardware store and had done lock work on Tyson's building, and he had previously been arrested for the burglary of a neighboring video store where he had changed the locks prior to the burglary. In 1988, Hunley was arrested and charged in the Tyson burglary and murder.

At Hunley's trial, the prosecution presented evidence to support the following theory of the case. On November 18, 1983, Hunley made an unforced entry into Tyson's apartment and looked around with a flashlight for small items to steal. Tyson surprised Hunley when she returned to the apartment. Tyson went for a kitchen knife, which Hunley grabbed from her. Hunley fatally stabbed Tyson and fled the apartment.

Hunley's first trial ended in a mistrial when the jury divided 7 to 5 in favor of acquittal after two days of sequestered deliberations. At the end of Hunley's second trial, the jury deliberated until 10:00 p.m. At that point, the jury was divided 8 to 4 or 7 to 5 in favor of conviction.[2] After the jury foreman informed the court that the jury could not reach a verdict within one hour, the court ordered the jury sequestered in a hotel overnight. That night, four jurors in two adjacent rooms, including the foreman, were burglarized. The burglar made an unforced entry into the jurors' rooms with a pass key and stole money and several small, easily concealed items.[3] The four burglarized jurors were interviewed by police the next morning.

---

1. Hunley does not dispute the relevant facts.

2. Before deliberations were recessed for the evening, a fifth juror also voted "not guilty." This juror later stated that she changed her mind before she fell asleep that night.

3. The foreman's $200 gold watch and several hundred dollars in travelers' checks were stolen. His roommate lost $87. Another juror lost $10, while her roommate lost $24. A fifth juror heard someone attempt to gain entry into her room that night.

All twelve jurors discussed the burglary among themselves. The jury then resumed deliberations. Despite the foreman's prediction the night before, the jury returned a guilty verdict within one hour after deliberations resumed that morning. The four holdout jurors changed their votes from "not guilty" to "guilty." Two of these four who changed their votes to "guilty," including the foreman, were victims of the hotel burglary.

Defense counsel moved for a mistrial because of the hotel burglary of the jurors. In response to this motion, the trial judge conducted an *in camera* hearing to determine whether the burglary had affected the verdict. Each juror stated individually that the burglary did not affect his or her verdict, although some jurors expressed concern over the incident. The trial judge found that the jury deliberated in good faith and that the four holdouts "basically wanted to be convinced beyond any doubt that (Hunley) was guilty of the charge(.)" The trial judge also noted that strong evidence of Hunley's guilt decreased the likelihood that the guilty verdict was influenced by the burglary. Finally, the court considered the affidavit of Hunley's jury expert, but did not find it persuasive. The court then denied defendant's post-trial motions and sentenced Hunley to 40 years in prison. *See Hunley,* 136 Ill.Dec. at 666–75, 545 N.E.2d at 190–99.

Hunley asserts two claims in this habeas petition: (1) that the prosecutor's misconduct during her rebuttal argument deprived him of his due process right to a fair trial; and (2) that the burglary of the jurors violated his sixth amendment and due process right to a trial by a fair and impartial jury. Respondents deny the merits of Hunley's claims, and assert that Hunley waived his right to habeas review of these claims by failing to sufficiently alert the state courts to any applicable constitutional grounds for his claims.

## DISCUSSION

### I. Procedural posture of Hunley's habeas corpus claims

■ Before considering the merits of Hunley's habeas corpus claims, the court must determine that Hunley has fulfilled the proper procedural requirements. There are two procedural obstacles that may bar a state prisoner's federal habeas corpus petition: failure to exhaust state remedies and waiver. *United States ex rel. Simmons v. Gramley,* 915 F.2d 1128, 1132 (7th Cir.1990); *United States ex rel. Sullivan v. Fairman,* 731 F.2d 450, 452 n. 3 (7th Cir.1984). Respondents do not dispute Hunley's exhaustion of state remedies. However, respondents claim that Hunley has waived his habeas claims. Under the waiver doctrine, a habeas petitioner must provide the state courts with a "fair opportunity to apply constitutional principles and correct any constitutional error committed by the trial court." *Sullivan,* 731 F.2d at 453, citing *Anderson v. Harless,* 459 U.S. 4, 5, 103 S.Ct. 276, 276, 74 L.Ed.2d 3 (1982) (*per curiam*); *Picard v. Connor,* 404 U.S. 270, 275–276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). This means that "the substance of the federal habeas claim must first be presented to the state courts." *Id.,* quoting *Picard,* 404 U.S. at 278, 92 S.Ct. at 513. The petitioner is not required to explicitly mention the specific constitutional rights implicated in his or her claims. However, it is not enough that "all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Id.,* quoting *Anderson,* 459 U.S. at 5, 103 S.Ct. at 276. In other words, the petitioner must have presented his claims in such a way as to "fairly alert the state court to any applicable constitutional grounds for the claim." *Id.*

Respondents assert that Hunley failed to properly alert the Illinois Appellate Court of the constitutional implications of his current habeas claims. This assertion is without merit. Although the Illinois Appellate Court relied primarily upon Illinois case law in deciding Hunley's prosecutorial misconduct and jury burglary claims, this does not mean that the Illinois Appellate Court was not fairly alerted to the constitutional implications of Hunley's claims. In consid-

ering Hunley's jury burglary claim, the Illinois Appellate Court opened with this statement:

> (Hunley) maintains that the jury burglary created such a probability of prejudice to his case that the verdict reached was inherently lacking in due process and violative of his right to a fair and impartial jury, because the burglary "powerfully reinforced" the theme of the State's closing argument "that everyone expects to be able to feel safe in their own home."

*Hunley*, 136 Ill.Dec. at 674, 545 N.E.2d at 198. The use of the terms "due process" and "right to a fair and impartial jury" clearly demonstrate that the Illinois Appellate Court was fully aware of the constitutional grounds for Hunley's jury burglary claim. Furthermore, the constitutional implications of any "impartial jury" claim are both well-established and self-evident. The United States Supreme Court has held that the right to a trial by an impartial jury is essential to the very concept of constitutional due process. *Irvin v. Dowd*, 366 U.S. 717, 721–22, 81 S.Ct. 1639, 1641–42, 6 L.Ed.2d 751 (1961).

Similarly, in discussing Hunley's prosecutorial misconduct claim, the Illinois Appellate Court noted that improper comments during closing argument "do not warrant reversal unless the argument as a whole was so seriously prejudicial that it deprived the defendant of a fair trial." *Hunley*, 136 Ill.Dec. at 676, 545 N.E.2d at 200. The Illinois Appellate Court concluded that the improper comments in this case did not result in sufficient prejudice "to have denied (Hunley) a fair trial." *Id.* 136 Ill.Dec. at 677, 545 N.E.2d at 201. Again, the referral to Hunley's constitutional right to a "fair trial" clearly demonstrates that the Illinois Appellate Court gave full consideration to the constitutional grounds for Hunley's prosecutorial misconduct claim.

Furthermore, like "impartial jury" claims, the constitutional implications of prosecutorial misconduct and fair trial claims are also both well-established and self-evident. *See Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (prosecutor's improper comments may be so serious as to "infect the trial with unfairness" and deny defendant's constitutional right to due process); *Donnelly v. Christoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974) (same); *United States v. Pirovolos*, 844 F.2d 415, 425–26 (7th Cir.), *cert. denied*, 488 U.S. 857, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988) (same).[4] Accordingly, Hunley has not waived the right to assert his two habeas corpus claims, and the court shall reach the merits.

## II. The prosecutorial misconduct claim

■ A defendant's constitutional right to due process is violated if a prosecutor makes comments during closing arguments that "poison the entire atmosphere of the trial." *Pirovolos*, 844 F.2d at 425, citing *Darden*, 477 U.S. at 181, 106 S.Ct. at 2471. It is not enough for Hunley to show that the prosecutor's remarks, viewed in isolation, were improper. Hunley must demonstrate that the improper remarks, viewed in context of the entire case, infected the trial with unfairness to such a degree that the outcome of the trial would likely be different if the remarks had not been made. *United States v. Hernandez*, 865 F.2d 925, 927–28 (7th Cir.1989); *United States ex rel. Alerte v. Lane*, 725 F.Supp. 936, 942 (N.D.Ill.1989), *appeal dismissed*, 898 F.2d 69 (7th Cir.1990). The due process analysis of prosecutorial misconduct focuses on the fairness of the trial as a whole, rather than the impropriety of the prosecutor's remarks. *United States ex rel. Crist v. Lane*, 745 F.2d 476, 482 (7th

---

**4.** For the same reasons, the two cases relied upon by respondents, *Sullivan* and *Anderson*, are inapposite. In both of these cases, the petitioner merely argued to the state appellate court that the trial court's actions were "erroneous," while raising constitutional due process arguments for the first time in the federal court. In both cases, it was held that the petitioner waived his habeas claim because: (1) he failed to present his argument to the state court in the context of a federal constitutional claim; (2) he never used the term "due process;" (3) the state appellate court's opinion indicated that it discerned no constitutional implications in the petitioner's claim; and (4) the claim's constitutional implications were not self-evident. *Anderson*, 459 U.S. at 6–7, 103 S.Ct. at 277; *Sullivan*, 731 F.2d at 453–54.

Cir.1984), *cert. denied,* 471 U.S. 1068, 105 S.Ct. 2146, 85 L.Ed.2d 503 (1985).

Hunley makes the following allegations of prosecutorial misconduct during the State's rebuttal argument:

(1) The prosecutor misstated the burden of proof by stating that Hunley could be acquitted only if the jury found that all the prosecution's witnesses were liars.

> Ms. STANTON: ... everyone in this case, according to the Defense, is a liar ... their defense is this is one, gigantic conspiracy by the police, and that conspiracy continues and goes right here (to the prosecution table).... And then we put on all these liars, so we are part of this gigantic conspiracy as well. That's what you have to accept. That every single person we called lied, because everything they said directly contradicts the defense. It is very clear. Either one side is a pack of lies or the other.

*Hunley,* 136 Ill.Dec. at 676, 545 N.E.2d at 200, R. 3175–78.

Although these statements are clearly improper, they do not automatically constitute reversible error. Attorneys are permitted broad latitude in drawing reasonable inferences and conclusions from the evidence. In *People v. Smith,* 158 Ill. App.3d 595, 110 Ill.Dec. 593, 598, 511 N.E.2d 770, 775 (1987), a prosecutor's assertion to the jury that they must find every State witness was lying before believing the defendant was not reversible error. The court reasoned that the statement was effectively a true statement, because the defendant's testimony did, in fact, directly contradict the testimony of the State's key witness. Similarly, in *People v. Alexander,* 127 Ill.App.3d 1007, 83

Ill.Dec. 651, 657, 470 N.E.2d 1071, 1077 (1984), *cert. denied,* 471 U.S. 1019, 105 S.Ct. 2027, 85 L.Ed.2d 308 (1985), the court held that although such arguments are often improper, they do not constitute reversible error where the defendant's testimony directly contradicts the State's primary witnesses. Here, the State's key witnesses testified that Hunley voluntarily confessed to the crime. Hunley, on the other hand, testified that the confession was physically and psychologically coerced. *Hunley,* 136 Ill.Dec. at 664, 677, 545 N.E.2d at 188, 201. Under these circumstances, the prosecutor's mischaracterization of the burden of proof was not sufficiently prejudicial to warrant reversal.[5]

■ (2) The prosecutor made improper references to defense counsel's law firm and improperly put her own integrity and the integrity of the State's Attorney's Office before the jury. These remarks were particularly egregious.

> Ms. STANTON: Now I have been around here a long time. In fact I have worked in and out of this building for over 10 years as an attorney, and (Assistant State's Attorney) John (Brady) probably has that many years as well, and you know, we don't get a raise if we win this case. We don't become partners in a big law firm if we win a case.... This is just another case like all the others that we are called upon to try every day. ... And I am not going to be part of a conspiracy all the way up to the (prosecutor's) table over some murder case that is like a lot of others, unfortunately. Like a lot of others.

*Hunley,* 136 Ill.Dec. at 677, 545 N.E.2d at 201; R. 3177–78.[6] The impropriety of

---

**5.** The two cases primarily relied upon by Hunley are distinguishable. In *United States v. Phillips,* 527 F.2d 1021, 1024–25 (7th Cir.1975), the court held that the prosecutor's statements that the jurors would have to convict the prosecutors and their witnesses of lying was reversible error. The prosecutor here, however, did not go so far as to suggest to the jury that they would have to convict the State or its witnesses of a crime in order to acquit Hunley. In *United States v. Vargas,* 583 F.2d 380, 387 (7th Cir. 1978), the court held that the prosecutor's suggestion that the jury should write on their ver-

dict form that each State witness "is a liar" if they acquitted the defendant was clearly improper. However, the court only considered the statement to be reversible error because of the "particularly prejudicial" effect of the prosecutor's unsupported allegations of the defendant's prior criminal conduct. No similar allegations were made here.

**6.** Hunley was represented at trial by two attorneys from the large Chicago law firm of Jenner & Block. Hunley's petition at 29.

these remarks is beyond question. Courts have found reversible error where prosecutors have commented on their own belief in the credibility of witnesses, or on their belief that charges would not have been brought against the defendant unless the prosecutor's office believed that the defendant was guilty. *See People v. Turner,* 127 Ill.App.3d 784, 82 Ill.Dec. 834, 469 N.E.2d 368 (1984); *People v. Valdery,* 65 Ill.App.3d 375, 21 Ill.Dec. 673, 381 N.E.2d 1217 (1978). Both of these cases are distinguishable, however. In *Turner,* the prosecutor told the jury that:

> The fact that (defendant) was not charged with the murder ... until April 18th I think has significance ... I think it showed we don't just charge people lightly with crimes....

*Turner,* 82 Ill.Dec. at 840, 469 N.E.2d at 374. These statements were held to be reversible error because they suggested that the defendant would not have been charged if the prosecution did not think he was guilty. *Id.* No such suggestion was made here. In *Valdery,* the court held that the prosecutor improperly placed the credibility of the State's witnesses on the integrity of the State's Attorney's office by stating:

> (I)n my mind ... the equality (sic) and integrity of (these) witnesses have never been higher. I have never had contact with people ... who have had the level of integrity and character of those people and I'm particularly impressed.... I hope you are as impressed with them as I have been.

*Valdery,* 21 Ill.Dec. at 676, 381 N.E.2d at 1220. Here, however, the prosecutor's comments did not involve her personal opinions on the credibility of the State's witnesses, or her personal opinions concerning Hunley's guilt. Although the comments regarding not being in a "big law firm," "(not getting) a raise," and "not going to be part of a conspiracy" are clearly irrelevant, unprofessional and improper, the remarks simply do not carry the prejudicial effect of the prosecutor's personal opinions on the credibility of the State's witnesses or the defendant's guilt. *See Alexander,* 83 Ill.Dec. at 657, 470 N.E.2d at

1077 (prosecutor's remarks that State witness "told the truth" and that prosecutor was not part of effort to "frame" defendant were not improper where defense counsel had attacked credibility of State's witnesses); *Smith,* 110 Ill.Dec. at 598, 511 N.E.2d at 775 (prosecutor's remarks denying participation in "conspiracy" against defendant were improper but were not reversible error). For these reasons, the challenged comments, although clearly improper, are not sufficiently prejudicial to warrant reversal.

■ (3) The prosecutor improperly accused defense counsel of lying and misstating the facts. During closing argument, defense counsel argued that Richard Fields, a cab driver who testified at trial, "was a witness" on the night of Tyson's murder who "must have seen the offender." In response to these statements by defense counsel, the prosecutor stated:

> (This case is) about ... truth, and it's about lies. (Defense counsel) got up here just five minutes ago and tried to tell you that there was a witness, (a cab driver) who saw the murderer ... that is an absolute lie. There is no Richard Fields that saw this murder. Never was.... Now, if you thought you heard a few misstatements of fact, you did. You're right because you did. You don't have to accept one thing (defense counsel) said. Not one thing.... And nobody has the right to pull the wool over your eyes....

*Hunley,* 136 Ill.Dec. at 676, 545 N.E.2d at 200; R. 3167–69. Although accusing defense counsel of lying is usually improper, it is axiomatic that the prosecutor is given wide latitude when defense counsel actually *does* misrepresent facts, thus "inviting" a response from the prosecution. *People v. Rockman,* 144 Ill.App.3d 801, 98 Ill.Dec. 566, 574, 494 N.E.2d 688, 696 (1986). The evidence at trial established that after Tyson's murder, a man later identified as Hunley was seen fleeing from Tyson's building and eventually entering a cab. *Hunley,* 136 Ill.Dec. at 667, 545 N.E.2d at 191; R. 2443. However, there was no evidence at trial that indicated the cab driver

observed Tyson's killer, remembered driving him in his cab, or knew anything about the Tyson burglary and murder or about Hunley. R. 3133. Under these circumstances, the prosecution was entitled to respond to what appeared to be a misstatement of the evidence by defense counsel. Although the prosecutor's insinuation that defense counsel lied cannot be condoned, the prosecutor's invited response is not sufficiently prejudicial to warrant reversal. *Darden,* 477 U.S. at 182, 106 S.Ct. at 2472.

(4) Finally, in an attempt to inflame the jury's passions, the prosecutor closed her rebuttal argument by restating her improper theme that defense counsel was lying and that the jury could not acquit without finding that the prosecutors and their witnesses were liars.

> Ms. STANTON: Some of us work within the rules. Some of us play fair. Some of us think justice means something. Some of us feel the truth is necessary. I think every one of you together can see that there is truth on one side and there is absolute falsehood and lies on the other.... (I)f you accept what the defense wants you to, you have to accept that this whole system is a fraud and a phony and a lie, and all the way from the beginning ... and all the way to the end of (the prosecutor's) desk.... Or you can tell (Hunley) you don't buy it. You're not going to let him beat the system.... You can tell (Hunley) "no" by returning a verdict of guilty.

R. 3194–96. Hunley's argument essentially repeats the same arguments made in (1), (2) and (3) above. The remarks recited here are improper.[7] However, Hunley has not demonstrated that these types of remarks, although clearly improper, were sufficiently prejudicial to warrant reversal.

In addition, the cases cited by Hunley are inapplicable. In *People v. Bean,* 109 Ill.2d 80, 92 Ill.Dec. 538, 548, 485 N.E.2d 349, 359 (1985), the defendant's conviction was reversed for reasons unrelated to the prosecutor's closing argument. Furthermore,

*Bean* focused upon the prosecutor's improper suggestion that defense counsel was seeking to inject reversible error into the trial. No similar suggestion was made here. In *People v. Emerson,* 97 Ill.2d 487, 74 Ill.Dec. 11, 15, 455 N.E.2d 41, 45 (1983), *cert. denied,* 488 U.S. 900, 109 S.Ct. 246, 102 L.Ed.2d 235 (1988), and *People v. Jackson,* 119 Ill.App.3d 951, 75 Ill.Dec. 891, 895–96, 458 N.E.2d 59, 63–64 (1983), reversible error was based on prosecutorial remarks accusing defense counsel of deliberately presenting "perjury" and "false evidence," attempting to "dirty up the victim," and using "fraud," "deception" or "trickery" for the purpose of "freeing his client" or "letting defendant walk out of the courtroom" and "back on the street." These remarks are considerably more prejudicial than the improper remarks here. Furthermore, the Illinois Supreme Court in *Emerson* carefully distinguished between the highly prejudicial and inflammatory effects of these remarks and the lesser effect of remarks describing defense counsel's arguments as a "smoke screen" or "snow job." *Emerson,* 74 Ill.Dec. at 16, 455 N.E.2d at 46. These lesser remarks, although improper, are not reversible error. *People v. Weatherspoon,* 63 Ill.App.3d 315, 20 Ill.Dec. 14, 20–21, 379 N.E.2d 847, 853–54 (1978).

In *People v. Monroe,* 66 Ill.2d 317, 5 Ill.Dec. 824, 826, 362 N.E.2d 295, 297 (1977), the court found the prosecutor's expression of personal opinion of defendant's guilt and accusations of defense counsel's attempts at "fraud" and "character assassination" to be reversible error. Again, comparable comments were not made here. Finally, in *People v. Clark,* 114 Ill.App.3d 252, 70 Ill.Dec. 48, 50, 448 N.E.2d 926, 928 (1983), the court found impropriety in the prosecutor's expression of his personal opinion concerning defendant's guilt, and his repeated accusations that defense counsel was using "trickery" and "sleight of hand" to "hide evidence"

---

**7.** It is particularly troubling that none of Hunley's timely objections to the prosecutor's improper comments were sustained. Nor did the trial judge give a curative instruction addressing the improper comments. In his general instructions, the judge merely told the jury to disregard any statement or argument by an attorney "not based on the evidence." R. 3200.

and "dirty the victim." The court held that no single one of these acts was reversible error, but that the cumulative repetition of these improper themes throughout the prosecutor's entire opening and closing arguments was sufficiently prejudicial to warrant reversal. In contrast, the improper remarks in this case were made solely in the prosecutor's rebuttal argument. Hunley does not allege that improper remarks were made at any other time during the lengthy trial, which consists of more than three thousand pages of transcript. Viewed in the context of the entire trial and the significant amount of evidence before the jury, it cannot be said that these four sets of improper remarks infected the entire atmosphere of the trial with such great unfairness that Hunley would probably have been acquitted if the remarks had not been made. *Hernandez,* 865 F.2d at 927–28. Because Hunley has failed to meet this difficult burden, his habeas petition on grounds of prosecutorial misconduct must be denied.

It should be noted that this ruling in no way condones the clear impropriety and unprofessionalism of the prosecutor's remarks.[8] Rather, in the context of the entire trial, these improper remarks were not sufficiently prejudicial so as to have denied Hunley his constitutional right to a fair trial.

### III. The jury burglary and its effect on impartiality

Hunley argues that the burglary of four jurors resulted in the denial of his constitutional right to a fair and impartial jury. The right to trial by an impartial jury is fundamental to the concept of due process. *Irvin,* 366 U.S. at 722, 81 S.Ct. at 1642. There appear to be only two reported cases directly addressing the issue of jury bias when a juror is victimized by a crime while sequestered. Interestingly, both of these cases are from Illinois. In the first case, *People v. Cannon,* 49 Ill.2d 162, 273 N.E.2d 829, 832 (1971), the defen-

dants were convicted of murder. No burglary or theft was involved in the facts of the case. During the trial, one of the jurors who had been sequestered reported that his razor blades had been stolen. This occurred prior to the case going to the jury. Defendants moved for a mistrial. The trial court interrogated the juror, who stated that the incident would have no effect upon his ability to fairly decide the case. Defense counsel then waived interrogation of this juror and the remaining jurors. On these facts, the Illinois Supreme Court held that there was insufficient evidence of prejudice to defendants and affirmed the trial court's denial of a motion for a mistrial. *Id.* 273 N.E.2d at 832.

The second case is *People v. Robinson,* 68 Ill.App.3d 747, 25 Ill.Dec. 288, 293, 386 N.E.2d 559, 564 (1979). In *Robinson,* the defendants were also convicted of murder, but no burglary was involved in the case. During jury deliberations, a juror's purse was stolen while the jury was sequestered in a motel. The jury sent a note to the court, stating that they were seriously concerned about the lack of security in their motel the previous night, and that the purse incident did not affect the verdict they had reached. Defendants moved for a mistrial. The court individually examined each member of the jury concerning the purse incident. Although most jurors expressed concern over the incident, each juror stated that the incident did not affect his or her ability to fairly decide the case. Based upon this examination, the trial judge ruled that there was insufficient evidence of bias and denied the motion for a mistrial. Relying expressly on *Cannon,* the Illinois Appellate Court affirmed. *Id.* 25 Ill.Dec. at 293, 386 N.E.2d at 564.

In addition, there is at least one case involving the criminal victimization of a juror during trial (not during deliberations), also from Illinois. In *People v. Novak,* 94 Ill.App.3d 1024, 50 Ill.Dec. 285, 290–91, 419 N.E.2d 393, 398–99 (1981), the defendant

---

**8.** Indeed, if the evidence against Hunley were as overwhelming as the respondents claim, one wonders why the prosecutor felt compelled to spend precious time discussing outlandish con-spiracy theories, and attacking opposing counsel's integrity and motives, rather than addressing the evidence.

was found guilty of murder and armed robbery. After a day of trial, a juror who was on his way home was verbally harassed by an unarmed man, who coerced the juror into giving him his gloves. The man was quickly arrested by police and the gloves were retrieved. In response to the trial judge's inquiry, the juror responded that the incident would not affect his impartiality. The other jurors responded similarly. On these facts, the trial judge's denial of the defendant's motion for a mistrial was affirmed.

In this case, the Illinois Appellate Court relied upon *Robinson* and *Novak* in affirming the trial judge's denial of Hunley's motion for a mistrial because of the jury burglary. The court held that as in *Robinson* and *Novak*, the inquiry conducted by the trial judge was sufficient to safeguard Hunley's right to a fair trial and an impartial jury. *Hunley*, 136 Ill.Dec. at 674–75, 545 N.E.2d at 198–99.

State court findings relating to juror bias are usually factual determinations that are presumed correct under § 2254(d). *Patton v. Yount*, 467 U.S. 1025, 1037 n. 12, 104 S.Ct. 2885, 2891 n. 12, 81 L.Ed.2d 847 (1984); *Lincoln v. Sunn*, 807 F.2d 805, 814–16 (9th Cir.1987). However, the applicable constitutional standard of jury impartiality is a question of law for the federal district court. *Id.* Thus, a federal district court has an independent duty to ascertain whether the presumption of correctness under § 2254 should attach to the state court's findings. *Id.* This means that this court should not accept the state court's conclusion that the jurors were impartial if that finding is not fairly supported by the record. *Smith v. Phillips*, 455 U.S. 209, 222, 102 S.Ct. 940, 948, 71 L.Ed.2d 78

(1982); *Braley v. Shillinger*, 902 F.2d 20, 22 (10th Cir.1990).

■ As noted above, there appear to be no federal cases on the question of jury impartiality when a sequestered juror has been victimized during deliberations.[9] There are numerous decisions involving the question of jury impartiality in the context of prior criminal victimization, particularly with respect to the *voir dire* examination of prospective jurors. Consider, for example, the following scenario. The defendant is on trial for rape. During *voir dire*, defense counsel asks a prospective juror whether she or anyone in her family has ever been raped or sexually assaulted. The prospective juror answers in the negative. Defense counsel does not challenge the prospective juror, and she is impaneled. After the defendant is convicted, it is revealed that this juror had in fact been a victim of rape five years earlier, but she failed to disclose this fact during *voir dire* examination. Was the defendant's constitutional right to a fair and impartial jury violated? Yes, if the defendant demonstrates that: (1) the juror failed to honestly answer a material question on *voir dire*; and (2) that an honest answer would have provided a valid basis for challenging for cause. *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984). In this hypothetical case, it would be indisputable that the fact the juror had been a victim of rape was a valid basis to exercise a challenge for cause. Because of the significant risk of prejudice to the defendant, the fact that the jury included a single juror who had been a victim of rape five years earlier would be sufficient grounds for reversal, because the defendant's con-

**9.** Only one federal case is marginally on point. In *United States v. Pfingst*, 477 F.2d 177, 198–99 (2nd Cir.), *cert. denied*, 412 U.S. 941, 93 S.Ct. 2779, 37 L.Ed.2d 400 (1973), the defendant was convicted of transferring and concealing corporate assets in contemplation of bankruptcy. During jury deliberations, a single juror became concerned about the safety of her automobile. A marshal went to the parking lot and found the automobile's door and glove compartment open. The marshal then informed the juror that some property may have been stolen from her auto-

mobile, although it was later determined that nothing of value had been taken. The trial court found that there was no indication that this juror or any of the other jurors were in any way influenced by this incident. The Second Circuit affirmed. However, the issue was not whether the juror was impartial because of the incident, but whether the government had met its burden of showing that the communication between the marshal and the juror was harmless to the defendant.

stitutional right to a fair and impartial jury would have been compromised.

Normally, in "juror-victim" circumstances, the trial court conducts an inquiry to consider whether the past victimization had any bearing on the juror's decision, just as the trial judge did in this case. However, a juror's firm assertion of impartiality despite past victimization is *not* dispositive, provided the defendant demonstrates "the actual existence of such an opinion in the mind of the juror as will raise the *presumption* of partiality." *Burton v. Johnson*, 948 F.2d 1150, 1157 (10th Cir.1991), quoting *Lincoln*, 807 F.2d at 815–16. In other words, the defendant's conviction must be reversed if the defendant demonstrates that the juror was tainted by actual bias. Actual bias may be found in one of two ways: (1) an express admission by the juror; or (2) proof of specific facts that show such a close connection between the prior victimization and the trial evidence that actual bias is presumed as a matter of law. This means that even if the juror answers the trial judge's questions honestly, a finding of impartiality is overcome if the defendant is able to demonstrate a close connection between the event that caused the bias and the trial evidence. *Id.* at 1158, citing *Baca v. Sullivan*, 821 F.2d 1480, 1483 (10th Cir. 1987), *see also Smith v. Phillips*, 455 U.S. at 222, n *, 102 S.Ct. at 948, n * (O'Connor, J. concurring) (federal district courts need not be deterred by the § 2254(d) presumption of correctness afforded to state court factual findings of presumptive or implied bias in exceptional circumstances). Furthermore, because of the serious constitutional concerns implicated, doubts regarding bias must be resolved against the juror. *Burton*, 948 F.2d at 1158.

A number of convictions have been reversed where a juror was presumed to possess actual bias because of the close connection between the facts of the case and the facts of the juror's prior criminal victimization. In *Burton*, for example, a defendant was convicted of first degree murder of her abusive husband in state court. The defendant claimed she was a victim of battered woman's syndrome and that she killed her husband to protect herself and her children from continued abuse. After the jury returned its verdict, it was discovered that during *voir dire*, one of the jurors had concealed the fact that she and her children had previously suffered abuse by her husband. The Tenth Circuit disregarded the trial court's finding of impartiality and held that the juror must be presumed biased as a matter of law because of the close connection between her experience and the experience of the defendant. The court noted that a truthful response during *voir dire* would have provided a sufficient basis for challenging the juror for cause, and ordered a new trial for the defendant. *Id.* at 1150–59.

Similarly, in *United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir.1979), a new trial was ordered on the ground that the fact a juror's son had previously used heroin barred any inference that the juror could be impartial in a case in which the defendants were charged with distributing heroin. In *United States v. Allsup*, 566 F.2d 68, 71–72 (9th Cir.1977) and *United States ex rel. DeVita v. McCorkle*, 248 F.2d 1 (3rd Cir.), *cert. denied*, 355 U.S. 873, 78 S.Ct. 121, 2 L.Ed.2d 77 (1957), jurors were presumed biased in bank robbery cases because of their banking ties and past experience with armed robberies. In *Jackson v. United States*, 395 F.2d 615 (D.C.Cir.1968), a juror was presumed biased because he had been a lover in a love-triangle similar to the one involved in the case on trial. And in *State v. Larue*, 722 P.2d 1039, 1042 (Haw.1986), it was held that a juror who had been a victim of child abuse could not be impartial in a case involving the sexual abuse of a minor. Finally, in *People v. Mitchell*, 121 Ill.App.3d 193, 76 Ill.Dec. 714, 716, 459 N.E.2d 351, 353 (1984), the Illinois Appellate Court reversed and remanded the defendant's burglary conviction because the trial court did not permit sufficient *voir dire* questioning of a juror who had reportedly been a burglary victim several years earlier. Thus, courts have long recognized that jurors who have been victims of the same crime as charged against the defen-

dant are likely to be biased against the defendant.

The foregoing cases are analogous to the present situation. The doctrine of presumed or implied bias applies whenever a juror who has participated in a guilty verdict was a past victim of a crime similar to the offense charged or the evidence of criminal conduct presented at trial. It stands to reason that the doctrine of implied bias should also apply where a juror sequestered during deliberations is victimized by criminal conduct similar to the crime charged in the case under deliberation. In fact, the doctrine of implied bias may even be more strongly implicated here than in the *voir dire* cases. It is reasonable to assume that a juror who has been victimized *during deliberations* is more likely to harbor actual bias than a juror who has been victimized years earlier.

To return to the hypothetical case, assume the juror was not a past victim of rape. Instead, during the first night of sequestered deliberations in the rape trial, an intruder breaks into the juror's motel room and rapes her. After reporting the rape to police and obtaining medical attention, the juror wishes to continue deliberations with the rest of the jury, who have all been informed of the rape incident. Within one hour after deliberations resume, the rape-victim juror and three other jurors change their votes from "not guilty" to "guilty," and the defendant is convicted of rape. Defense counsel then moves for a mistrial, asserting jury bias caused by the rape incident. Is it conceivable that a trial judge would not immediately grant the requested mistrial? Even if all the jurors, including the rape victim, firmly stated that the incident did not affect their impartiality, and even if the trial judge believed that the jurors were sincere, would any appellate court accept factual findings of impartiality as fully supported by the record?

Perhaps a thorough inquiry into possible jury bias and the jurors' unanimous assertion that their impartiality was not impaired by a criminal incident during deliberations may be sufficient to protect the defendant's right to a fair and impartial jury if the criminal incident does *not* bear a close connection to the evidence of criminal conduct presented at trial. For example, in *Robinson*, the purse snatching had nothing in common with the facts of the murder case. Similarly, in *Cannon*, the theft of a few razor blades did not have a sufficiently close connection to the facts of the murder case to invoke the implied bias doctrine. Finally, in *Novak*, the minor incident on the train after a day of trial bore little resemblance to the facts of the murder and armed robbery case on trial. However, all of these cases are distinguishable from the present case, which does involve a strikingly close connection between the criminal incident and the facts of the case. Consider the following facts:

(1) The prosecution's theory of the case was that a burglar made an unforced entry with a key into Lisa Tyson's apartment, intending to steal small, easily concealed items. The burglar was taken by surprise when Tyson suddenly entered the apartment. The burglar then struggled with Tyson, fatally stabbed her and fled.

(2) Hunley's first trial ended in a mistrial when the jury was deadlocked at 7 to 5 in favor of acquittal.

(3) At the end of Hunley's second trial, the jury deliberated until 10:00 p.m., and stood at 8 to 4 in favor of conviction. At that point, the foreman informed the court that the jury was unlikely to reach a decision within an hour. Deliberations were recessed and the jury was sequestered that night in a motel.

(4) During that same night, a burglar made an unforced entry with a pass key into two adjacent motel rooms housing four jurors. The burglar stole several small, easily concealable items from the jurors' rooms and disappeared. All twelve jurors were notified of the incident, and were questioned by police. The jurors expressed concern over the incident.

(5) Later that morning, the jurors resumed deliberations. Despite the foreman's prediction the night before that the jury could not reach a verdict in one hour, the jury in fact rendered a guilty verdict within one hour. The four jurors who had

voted "not guilty" before the burglary changed their votes to "guilty." Two of these four jurors, including the foreman, had been victims of the burglary the night before.

(6) In support of Hunley's motion for a mistrial, Hunley submitted the affidavit of Professor Hans Zeisel, a University of Chicago law professor and a recognized jury expert. Professor Zeisel concluded that the jury burglary seriously reduced the probabilities that the jury would render a verdict other than guilty. Furthermore, the jurors' denial of bias after the verdict was unreliable, not because the jurors were dishonest, but because "the confession of bias under these circumstances would be a confession of intellectual or moral deficiency;" thus producing an "unconscious bias." Zeisel affidavit at ¶¶ 17–18.[10]

While no single fact is sufficient *per se* to demonstrate presumptive bias, the series of events viewed as a whole sufficiently demonstrate a presumptive bias. The jury burglary placed at least four jurors in the shoes of the victim. It is likely that the jurors thought about what might have happened if they were awakened during the night and had surprised the burglar—perhaps they would have also experienced a violent confrontation with the burglar. The factual connection between the jury burglary and the burglary on trial is significant—both involved unforced entries into a person's living quarters, apparently with a misappropriated or stolen key, in order to steal small, easily concealed items. Combine this factual connection with the remarkably quick turnaround of the four holdout jurors, including two who were burglary victims, and the circumstances suggest that bias must be presumed as a matter of law. None of the cases relied upon by the Illinois Appellate Court involve such a close connection between the jurors' criminal victimization and the criminal conduct on trial. Nor do those cases involve a situation where four jurors, including two of the recent victims, quickly changed their votes from "not guilty" to "guilty." *Robinson, Cannon,* and *Novak* are distin-

guishable from the facts of this case. Bias against Hunley must be presumed.

## CONCLUSION

Maurice Hunley's petition for a writ of habeas corpus is granted. Execution of the writ is stayed on the condition that the State of Illinois grant petitioner a new trial within a reasonable time, not to exceed 120 days.

---

**10.** Attached to Hunley's petition as Exhibit A.